COLUMBUS BROWN *vs.* JAMES P. BLUNT and another.

Somerset.     Opinion July 19, 1881.

*Fraud.     Fraudulent representations.     Damages.*

To enable one to recover damage for false representation by a party when making a conveyance to him, it is essential that there should be some evidence that he has been thereby injured.

When the only consideration for such a conveyance is that the plaintiff was induced thereby to pay his own debt, he cannot be said to be injured, because he suffered no damage.   It was not defrauding him to induce him, by means of a false representation, (had that been proved) to pay his own debt.

Nor are expenses, subsequently incurred in the prosecution of fruitless suits, based upon such conveyance, evidence of damages resulting from the false representation, when it appears that by the exercise of common prudence and caution, such suits would not have been commenced.

ON EXCEPTIONS.

An action on the case for deceit in selling to the plaintiff six wagons, in which the plaintiff alleges that the defendants had no interest in fact.   The writ was dated February 23, 1880.

Plea, general issue.

The facts are stated in the opinion.

*D. D. Stewart*, for the plaintiff.

From Lord COKE, to the present time, it has been the glory of the common law that it abhors fraud in whatever shape it may present itself.

"The common law," said all the judges of England in *Fermor's* case, 3 Coke, 78, a, "doth so abhor fraud and covin, that all acts, as well judicial as others, being mixed with fraud and deceit, are in judgment of law, wrongful and unlawful."

"Fraud," said PARKER, C. J. in *Somes* v. *Brewer*, 2 Pick. 192, "vitiates all transactions, even those of a court of record."

"A learned writer terms fraud *hydra multorum capitum.*" BIGELOW, C. J. in *Reynolds* v. *Reynolds*, 3 Allen, 606.

The present case presents one of those heads.   It involves both fraudulent acts, in selling him the Huntress contract without telling him it was worthless, and fraudulent words in telling him

that his title to six wagons was good. *Pasley* v. *Freeman*, 3 T. R. 51; *Lee* v. *Jones*, 17 C. B. (N. S.) 495; *Com.* v. *Stone*, 4 Met. 47; *Lobdell* v. *Baker*, 1 Met. 201; *McCance* v. *R. R. Co.* 7 Hurls & N. 490; *Donovan* v. *Donovan*, 9 Allen, 140; Bigelow on Fraud, 4, 70, 71; *Marston* v. *Knight*, 29 Maine, 341; *Nowlan* v. *Cain*, 3 Allen, 261; *George* v. *Johnson*, 6 Humph. (Tenn.) 36; *Bean* v. *Arnold*, 16 Maine, 251; *Hussey* v. *Sibley*, 66 Maine, 192.

*Folsom and Merrill*, for the defendants, cited: *Coe* v. *Persons unknown*, 43 Maine, 436; *Walker* v. *Lincoln*, 45 Maine, 71; *Sweet* v. *Brown*, 12 Met. 177; *Allen* v. *Holton*, 20 Pick. 458; *Munro* v. *Gardiner*, 5 Am. Dec. 531; *Leonard* v. *Vredenburg*, *Idem*, 316; Benj. Sales, §§ 428, 429; Add. Torts, §§ 1218, 1226; Broom's Com. on Com. Law, 339; Chitty Contr. 682, 683; 10 Mass. 199; 25 Maine, 247; *Atwood* v. *Chapman*, 68 Maine, 40; 1 Addison Con. 242.

BARROWS, J. It appears in the exceptions, that the defendants, on May 5, 1877, had control of an execution which had been recovered in the name of a Skowhegan bank, against one Huntress and the plaintiff, upon a note in which the defendants were payees, and said Huntress and the plaintiff (as his surety) were original promisors. One of the defendants went with the attorney and sheriff to the plaintiff's house, with the avowed purpose of levying the execution upon the plaintiff's homestead; but such negotiations were then had between them that no levy was made, the plaintiff agreeing to go with them to the village, and give his note for the debt, secured by a conveyance of real estate, which he did on the same day, and then and there received from the defendants a written assignment of all defendant's interest in a certain agreement or contract in writing, which had been made some two years previously, between said Huntress and the defendants, whereby Huntress had agreed to build a certain number of wagons for the defendants, they furnishing certain stock and materials, the wagons and all materials to be and remain the property of defendants during the process of building, and until disposed of by them, when the proceeds were to be appropriated,

first, to the payment of the defendants for such stock and material as they might furnish, and the residue to go to Huntress in payment for the labor and materials furnished by him. The assignment given by defendants to plaintiff, closes with the following significant language: "Meaning and intending to release and assign simply the interest which we now hold and retain in the said agreement, and the property specified therein. No claim to be made upon us in any event in regard to said matter or said property, and we are not to be liable for costs in looking up said property, or in any suit to enforce said agreement."

If the assumptions made by plaintiff's counsel in argument as to matters of fact were verified by the testimony reported, and there was evidence upon which the jury would have been justified in finding that the plaintiff, in the exercise of common prudence and caution, was nevertheless deceived by a false and fraudulent assertion on the part of the defendants, that they had a good title to six of the wagons referred to in the agreement, and was induced thereby to pay his money to the defendants for the assignment of a title, which not only was of no value, but which entailed upon him a heavy loss in endeavoring to enforce it, then certainly the nonsuit which was ordered at *nisi prius*, ought to be set aside. The objection to the testimony of the plaintiff, interposed by defendant's counsel, was rightly overruled, and plaintiff was permitted to put in his "evidence relating to the false representation." What was it? Aside from the contract with Huntress, and the assignment by the defendants before spoken of, there is only the testimony of the plaintiff himself, which upon his examination in chief, in reply to his own counsel, consists of a somewhat bold, though repetitious statement, defective as to exact time and circumstances, that when Blunt gave him this writing, "he said the title to those wagons was good;" "that there were six wagons not released that I was to have a claim on; I don't recollect that he told me at that time into whose hands those six wagons had gone, or any portion of them; don't recollect that he said what they were worth; said that would be my only way to get my pay. I asked him if the bill of sale was good, and he

said it was perfectly good. He says 'yes, just as good as it ever was.' His lawyer spoke up and said, it is good for twenty years. Acting upon the strength of his representations, I paid him the money. I gave him a claim on my farm on a year's time. When the year was out, he deeded the farm away, and got the money on it himself. After paying him in this way, I found out where the wagons were. Bartlett had two ; Atwood, one ; Steward or Ripley, one ; Trafton, one, and Davis, one. Mr. Blunt owned up that the claim against Davis wasn't good for anything before he transferred the bill of sale to me. I brought actions against Trafton, Bartlett, Steward and Atwood, not against Davis ; calculate I was obliged to abandon them. They recovered costs against me. Don't know of anything else of importance that was said at that time that Mr. Blunt made this transfer to me, only that he told me the bill of sale was good, and that would be my only way to get my pay out of him."

If the case stopped here, it might fairly be said that the testimony, if not modified or controlled, would justify a jury in finding the concurrent intentional deceit, and damage accruing therefrom to a party acting with reasonable caution, which will suffice to maintain the action. See discussion of principles applicable in such cases, in *Hammatt* v. *Emerson*, 27 Maine, 308.

These points established the case would fall within the familiar and incontrovertible principle of law, referred to by the court in *Lobdell* v. *Baker*, 1 Met. 201, "that where a party affirms either that which he knows to be false, or does not know to be true to another's loss and his own gain, he is responsible in damages for the injury occasioned by such falsehood." If the evidence suffices to establish those points, manifestly the defendant is not relieved from liability, because the conveyance which his fraud may have induced the plaintiff to accept, contains no warranty respecting the matter to which the alleged false representation relates, or may be a mere naked release of his interest with stipulations against further liability in the premises. See *Nowlan* v. *Cain*, 3 Allen, 261.

The fact that the conveyance which the defendant in such an action has given contains no warranty, but on the contrary,

stipulations against liability on the part of the vendor, is not conclusive that he has made no false representations to induce his vendee to accept such a conveyance. The contents of the conveyance may furnish matter for the consideration, first, of the court, and then, if a *prima facie* case is made out, of the jury, bearing upon the question whether the alleged false representations were, in fact, made, and whether the plaintiff in the exercise of reasonable caution could have been deceived thereby, seeing what was suggested by the character of the writing; but the writing works no estoppel upon a party actually defrauded, while its existence may sharply suggest the necessity of clear and decisive proof of the fraud which is relied on to vitiate it and give the defrauded party a right of action outside of it. Hence the justice presiding at *nisi prius* admitted and heard all the evidence touching the alleged fraud which the plaintiff had to offer. The reasoning of the court in *Parlin* v. *Small*, 68 Maine, 290, 291, is applicable in all such cases. The written transaction between the parties "is a wall of evidence against oral assaults to begin with. It should not be battered down for alleged deceits or misunderstandings, unless the proof of them is clearly and abundantly established." And again, quoting from a Pennsylvania case, "It has more than once been decided that it is error to submit a question of fraud upon slight parol evidence to overturn a written instrument. The evidence of fraud must be precise, clear and indubitable, otherwise it should be withdrawn from the jury." Conceding that at the end of his examination in chief, the plaintiff had made out a case that would entitle him to go to the jury, it seems equally clear that when his cross-examination was finished and he announced that he had no more testimony to offer, the case was so modified that a verdict in his favor could not have been sustained, and hence the nonsuit of which he complains was properly ordered.

At the close of the plaintiff's examination in chief, we are left with the impression that the three hundred dollars named in the assignment, as a consideration, was actually paid in money or money's worth, under circumstances of some hardship, by plaintiff to defendant for the transfer of their claim on the wagons. But it presently appears upon cross examination that he paid nothing but the debt and costs in the execution which they held

against him, as surety for Huntress. The chief element of damage to the plaintiff and the chief motive for fraud on the part of the defendants vanish upon this avowal.

Plaintiff's counsel strive to find a motive for the defendants to commit a fraud in the supposed wish to procure from the plaintiff a conveyance of his land, instead of making a levy upon it. But the hypothesis is not supported by plaintiff's testimony, which tends to show that nothing was said about making the assignment to the plaintiff until after the agreement for a conveyance had been made. "The arrangement was made at my house when they come there for me to go to the village, and give a claim on my farm and the note. I can't say as to whether or not the wagons were first mentioned after I went to Harmony village, and went to see Mr. Huntress," says the plaintiff. "I don't remember whether I knew the wagons were sold or not." The aspect that the case now wears is that of a simple making over to the surety of whatever possibilities of reimbursement from the defaulting principal the creditor had in his power. There remains no conceivable motive for the perpetration of any fraud, unless it be pure malice.

The remark of BULLER, J. in *Pasley* v. *Freeman*, 3 T. R. 51, respecting *Crosse* v. *Garden*, Carth, 90, is apposite : "A man may be mistaken in his property and right to a thing without any fraud or ill intent."

But plaintiff's counsel still urge that he suffered damage from defendant's affirmation by reason of the expense he incurred in attempting to enforce the contract assigned, and they insist that the doctrine of *Pasley* v. *Freeman*, 3 D. and E. 51, that it is not necessary that the defendant should have been benefitted by the deceit in order to maintain the action where there has been a false affirmation with intent to defraud and consequent damage, should be applied. The doctrine is correct, if applicable.

In the complicated transactions of trade, fraud appears in such manifold and protean guise, that we are not disposed to lay it down as a rule of law that no action can be maintained for an intentionally false affirmation, causing damage to a reasonably cautious plaintiff, unless it appears that the defendant had an interest in causing it. Doubtless there may be cases where satis-

factory proof may be presented that the defendant has thus intentionally deceived the plaintiff to his injury and loss when it might be impossible to show that he himself was benefitted thereby, or that he colluded with those who were. We do not feel inclined to question the correctness of the doctrine of *Pasley* v. *Freeman*. But in the practical consideration of cases of this sort the remark of ASHURST, J. in that case that "it is not likely that such a species of fraud should be practised unless the party is in some way interested" should not be overlooked. The question here is narrower. Was there enough in the testimony offered in this case to warrant a verdict for the plaintiff? Weak in more than one point, upon one which it was essential for the plaintiff to establish it is entirely wanting.

"To enable one to recover damage for a false representation it is essential that there should be some proof that he has been thereby injured." *Fuller* v. *Hodgdon*, 25 Maine, 248.

There is no proof here of any damage to the plaintiff which could have happened to any one using ordinary caution. The payment of his own debt was no damage. It was not defrauding him to induce him to pay it by means of a false representation, had that been proved. Hence it is held in *Commonwealth* v. *McDuffy*, 126 Mass. 467, that the offence of obtaining property by false pretences cannot be committed when the party charged obtains no more than is rightfully due him; that the question in such cases is whether the defendant had an intent to defraud and effected that purpose; whether in order to accomplish it he made use of fraudulent representations and succeeded by means thereof.

The only other damage suggested was purely the fruit of plaintiff's venturesome spirit in litigation of which this suit furnishes fresh proof. The assignment was a written warning to him that there was nothing there that the defendants would risk any cost to secure. His testimony shows that he saw Huntress the day he received it, and for aught that appears could have ascertained before any cost was made whether Huntress had authority to dispose of the wagons.

As remarked by Lord KENYON in *Pasley* v. *Freeman*, "undoubtedly when the common prudence and caution of man are sufficient to guard him, the law will not protect him in his negligence." It was probably the failure to prove any damage

for which an action could be maintained which induced the presiding judge to hold that "the evidence was not sufficient to prove a false representation that would entitle the plaintiff to. recover;" "that the evidence failed to prove what must be a material averment in any count which could properly be filed by way of amendment" and to order a nonsuit.

On the case here presented we do not think the plaintiff was justly aggrieved by these rulings.

*Exceptions overruled. Nonsuit confirmed.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and LIBBEY, JJ., concurred.