CARRIE B. McCALL vs. W. M. BUSHNELL and another.

June 7, 1889.

41 37
45 152
41 37
46 408
41 37
55 377
41 37
57 209
41 37
74 431

Written Instrument—Avoidance for Fraud—Strength of Proof Required.—A contracting party, who has knowingly executed a written instrument intended to embody and evidence the agreement, should not be allowed to avoid the legal effect of the instrument, on the ground that its execution was procured by fraud, unless the proof be clear and strong.

Same—Avoidance of Release—Insufficient Evidence.—Evidence *held* not to justify a verdict avoiding a release executed by the plaintiff after it had been read to her, the plaintiff claiming that she paid no attention to the reading because of previous fraudulent statements as to its contents.

Appeal by defendants from an order of the district court for Ramsey county, *Buckham,* J., presiding, (acting for a judge of the second district,) refusing a new trial.

*Omar Bushnell,* for appellants.

*John D. O'Brien* and *J. C. Grace,* for respondent.

DICKINSON, J. The defendants are partners, engaged in the business of real-estate agents and brokers. This action is for the recovery of a share of commissions earned by them in the sale of certain real estate. The evidence went to show that the defendants had agreed to share with the plaintiff their commissions from such business of this kind as she might secure for them, and that she did bring about negotiations resulting in the sale referred to. The jury awarded a recovery of $243.75, and the verdict should be sustained, unless a release executed by the plaintiff was effectual to bar her action.

The only question upon which there can be doubt is whether the execution of the release was procured by such fraudulent means as to avoid it. Prior to the executing of the release, the plaintiff had contracted, through the defendants as agents of one Foulke, for the purchase of certain land of the latter. She had paid to the defendants $100 of the purchase price, and had obligated herself by contract to make other payments. In October she wrote to the defendants, stating that she had experienced difficulty in securing money to

make such payments on her contract of purchase. After referring to "the two hundred and forty odd dollars due me from you as commission on that sale of last summer," she says: "I ask you if you will not allow me to withdraw from the contract, and forfeit the money paid; also the commission due me, before spoken of." No reply was made to this letter, but some two months later the plaintiff had an interview with the defendants at their office. The evidence is conflicting as to the conversation and circumstances attending the rescission of the plaintiff's contract of purchase, and the executing of the release, which was done at that time. The plaintiff's version of the transaction, upon which alone her case depends, is in substance as follows: In the course of the conversation she remarked that the defendants had never mentioned the commissions they had promised her. One of the defendants stated that they were credited to her in their office. The defendants agreed or consented to the rescission of her contract of purchase, and insisted that if that was done she should be repaid the $100 she had paid thereon. She at the same time stated her willingness that they should retain that as forfeited, and expressing her appreciation of their honorable and generous conduct when the repayment of this was insisted upon. Nothing was said in this interview about her forfeiting her commission due from them. The parties then executed a formal written agreement, annulling the plaintiff's contract for the purchase of the Foulke land. No question is suggested as to the authority of the defendants to do this. One of the defendants, with whom this negotiation was principally carried on, then said: "My brother will now read to you a paper, and, after you have signed it, the cashier will give you a check for a hundred dollars." She asked what was the use of having another paper drawn up. He said that it was a mere matter of form, and it had to be done in a business way. It would protect her from trouble in this property in the future, and went to show that the contract was annulled, and it would be filed away with the old contract. He then went out of the office, saying to her—"Come in some time the latter part of January, and I will have more time to talk with you about that other matter;" referring, as the plaintiff supposed, to the commissions due her, as that was the only other matter they had been

discussing. A brother of the defendants then read to her a paper, to which she paid no particular attention, supposing it was merely the annulling of the contract and a receipt for $100. She signed it, and received a check for that amount. The instrument thus signed was a release under seal, expressing as the consideration $100 paid, and embodying distinctly the plaintiff's release and discharge of the defendants "from all claims, demands, accounts, agreements, contracts, or obligations of every name, kind, character, or nature." Of the testimony on the part of the defendants it is only necessary to say generally that it contradicts that of the plaintiff upon the issue of fraud.

The peculiar circumstances of this case are such, and the weight of the evidence, including that which is involved in the undisputed circumstances, is so opposed to the verdict, that in our judgment the verdict should be set aside. There was no relation of trust and confidence between the parties. There is no claim that the plaintiff did not understand that in dealing with the defendants it was necessary for her to exercise that care for her own interests which is ordinarily required of contracting parties. She is a woman of intelligence, as is apparent from her testimony, and there is no claim made that she was not fully capable of understanding the import and effect of this release. She had written to the defendants, proposing, of her own accord, a rescission of the Foulke contract, upon the terms of her forfeiting the $100 paid thereon, and also relinquishing her claim in respect to this commission. She never retracted that offer, nor indicated, so far as the case shows, that she was unwilling to abide by it; her only claim being that, in the subsequent negotiations when the release was executed, nothing was said about it. It is extremely improbable that in this purely business transaction the defendants, instead of openly accepting this distinct offer of the plaintiff to relinquish her claim for commission, and which the defendants had no reason to suppose she was not still willing to do, would say nothing about that, but, by *fraudulent* means, seek to relieve themselves from the obligation which she had thus voluntarily proposed to release. Again, the plaintiff's only claim to avoid the effect of the release is that, by the defendants' misrepresentation that its purpose was to

show that the Foulke contract had been rescinded, she was led to pay no particular attention to the reading of the instrument. Yet these parties had just executed a formal agreement rescinding that contract, as the plaintiff well understood. Hence the reason which, according to her testimony, Bushnell gave her for having this additional instrument executed was not a satisfactory one, nor would it naturally, under these circumstances, produce inattention to the terms of the instrument which was then read to her. This would seem to be quite as likely to arouse and fix the attention of the plaintiff as to divert it.

It is inexpedient, upon grounds of public policy, that a solemnly executed instrument, known at the time to have been executed for the very purpose of embodying and evidencing the agreements and accomplishing the purposes of the parties, should be set aside upon the ground of fraud, unless the proof be clear and strong. *Parlin* v. *Small*, 68 Me. 289; *Brown* v. *Blunt*, 72 Me. 415; *Martin* v. *Berens*, 67 Pa. St. 459; *Cannon* v. *Jackson*, 40 Ark. 417. The instrument .itself, knowingly executed, becomes a strong "wall of evidence," not to be lightly overcome by unsatisfactory oral testimony. We do not place our decision at all upon the ground of the plaintiff's negligence, this action being between the original parties to the transaction, but solely upon the ground that the evidence of fraud was insufficient to justify the avoiding of the release.

Order reversed.