## WILLIS SLAWSON v. NORTHERN STATES POWER COMPANY.[1]

December 3, 1937.

No. 31,361.

*Victor J. Michaelson* and *Lawrence Lunde,* for appellant.

*A. William ,Groth, Cyrus Erickson,* and *Murdoch & Hatfield,* for respondent.

LORING, JUSTICE.

In a suit to recover a payment made to the defendant, Northern States Power Company of Wisconsin, to be used for the construction of a transmission line, the plaintiff had a verdict and comes here on appeal from an order granting the defendant judgment notwithstanding the verdict.

Originally the Northern States Power Company of Wisconsin was organized under the name of the Wisconsin-Minnesota Light & Power Company, and subsequently the name was changed to its present form. The Northern States Power Company of Minnesota was also joined as a defendant in this action but later dismissed. The Wisconsin corporation will hereinafter be called the defendant.

[1]Reported in 276 N. W. 275.

The plaintiff and 12 other people residing on farms in a district known as Cook's Valley, west of Kellogg, signed an agreement with the defendant whereby each paid, at the execution thereof, $500 to that company, for which it agreed—

"to build complete transmission line taking the highway from the primary line in Kellogg to the farm of Chas. Cleveland and be ready to supply electric service to the following [here follow the names of the 13 individuals, plus School District 28]. This agreement is effective only when all the above mentioned have signed hereon and have paid to the Wisconsin-Minnesota Light & Power Company the sum of $500 each. Otherwise this agreement is void and the Wisconsin-Minnesota Light & Power Company agrees to return to those having paid, the full amount paid. It is expressly understood and agreed that the electric line built is to be and remain the property of the Minnesota-Wisconsin Light & Power Company [sic] which company agrees to keep said line in repair."

School District 28 never signed the agreement or paid the $500. It is asserted by the plaintiff that on December 5, 1919, three days after the quoted agreement was executed, it was modified orally by a promise of the power company to plaintiff that at the end of ten years the $500 should be repaid with interest to each signer of the agreement, and if others than the signers connected with the power line, they were to be charged $500 therefor, and such sum was to be apportioned among the signers.

The issues in the case were pleaded, tried, and submitted to the jury upon the theory that the written agreement was a valid and binding contract between the company and the 13 individual signers and that the alleged oral arrangement was a modification of the written document.

It was claimed that the conversation alleged to have modified the contract took place on the highway where plaintiff met the defendant's representative in the presence of one of the other signers, and that, upon a promise being made to refund the money within ten years with interest, the plaintiff made out the check to defendant for $500.

The plaintiff here attempts to take the position that the written document never became an effective instrument because it was not signed by the school district and because the district did not pay the $500. That position is not open to the plaintiff because the case was pleaded, tried, and submitted upon the theory that the writing was a valid and binding contract but modified by a subsequent oral arrangement. The jury found for the plaintiff, but the trial court set aside the verdict and made a memorandum as follows:

"This case was submitted to the jury with reluctance. The court felt at the time that the evidence in favor of the plaintiff was neither clear nor convincing; but, nevertheless, submitted the issue so as to have an opportunity for more deliberate consideration and study.

"Persons who undertake to modify a written agreement by parol should not be required to speak with the precision of a legal draftsman. They may express their thoughts in the language of the streets or of the farm. But while we should be very lenient with regard to the form of the expression, justice requires us to be fairly critical of its content and purpose. A written contract should not lightly be brushed aside. The layman knows that a written contract is a binding obligation. We do him no injustice when we assume that he has acted in the light of that knowledge.

"Applying these tests to the evidence in this case, I can find nothing to show that the parties ever intended to modify the written agreement or to substitute an oral one in its stead. At most there was merely some discussion as to what the written agreement meant."

A parol modification of a written contract must be made to appear by clear and convincing evidence. John A. Stees Co. v. Willis, 151 Minn. 192, 186 N. W. 391. The trial court was of the opinion that the evidence produced by plaintiff was not of that character. The alleged conversation took place about 17 years before the trial. The witnesses thereto were both interested in the result. The most

unsophisticated person, in view of the vicissitudes of life and the fraility of human memory, would be likely to reduce such a modification to writing when it might not be performed for ten years, especially when a writing had so recently been executed which so specifically integrated the contract. The conversation as related by plaintiff himself strongly suggests that defendant was urging the financial advantage of the existing written arrangement rather than making a promise of repayment. The evidence of consideration for the modification is extremely unsatisfactory if not wholly lacking. Weighing all the circumstances, we do not feel that we should disturb the trial court's action.

The order appealed from is affirmed.