## LEO HENTGES v. ERNEST SCHUTTLER.

77 N. W. (2d) 743.

May 25, 1956—No. 36,778.

*Severson & Qualley,* for appellant.
*Ostensoe & Ostensoe,* for respondent.

DELL, CHIEF JUSTICE.

This is an action in which the plaintiff seeks to collect a real estate commission claimed to be due him under an exclusive sales contract. There was a verdict for defendant but the district court granted plaintiff's motion for judgment notwithstanding the verdict. From the judgment so entered defendant appeals.

Plaintiff, Leo Hentges, has been engaged in the real estate business in Canby since 1948. Defendant, Ernest Schuttler, is a farmer living on his farm located three miles from Canby. He also owned a 160-acre farm in South Dakota. The parties had various business transactions since 1935.

On several occasions prior to June 4, 1953, the parties considered defendant's listing the South Dakota farm for sale with the plaintiff. On June 4 they met in plaintiff's office and signed an exclusive sales contract which, among other things, provided:

(1) Plaintiff was to have the exclusive right to sell or contract to sell the South Dakota farm for a period of six months and the agreement was to remain in effect thereafter until defendant furnished plaintiff with a 10-day written notice of his intention to terminate the contract. The price and terms of the sale were to be as stated on the reverse side of the contract and the sale price was listed at $14,000.

(2) Plaintiff's commission was to be $5 an acre upon any sale made while the contract remained in force whether the sale was actually made by him or not and regardless of whether the sale was made upon the terms stated on the reverse side of the contract.

(3) If any sale were made by defendant himself within three months after the termination of the agreement to a person with whom plaintiff had prior negotiations and of which defendant was advised, plaintiff was, nevertheless, to receive his full commission.

The contract was on a printed card form, and plaintiff testified that the contract was the type generally used by real estate agents in the community.

Defendant maintains that at the time the contract was signed he had consented only to a six-month listing and to a commission of $5 per acre. He claims that he did not know of the provision in the contract providing that it was to continue in force until such time as plaintiff was given a ten-day written notice of its termination. Also he disclaims any knowledge of the provision providing that plaintiff was to receive $5 an acre commission whether the farm sold for $14,000 or not as well as the provision providing that plain-

tiff would still be entitled to his commission if the sale were made by defendant to a buyer previously contacted by plaintiff if such sale were made within three months after the termination of the contract. The card was taken from plaintiff's desk drawer and was filled in by plaintiff in the presence of defendant. Defendant claims that he signed the contract without reading it and that he assumed it contained only the provisions previously orally agreed upon; that immediately after he signed it plaintiff returned it to the drawer. Plaintiff, on the other hand, testified that defendant read the contract at the time he signed it. No copy of it was given to the defendant.

Between June 4 and December 4, 1953, plaintiff contacted several people in an effort to sell the farm but without success. In December 1953 defendant asked plaintiff if he would be required to sign a new agreement and was told that that would not be necessary. Here again the testimony is conflicting; defendant testified that no explanation was given for plaintiff's answer while plaintiff claims that he explained to defendant that until defendant gave 10-days notice of termination, the contract would remain in force and effect. In January 1954 plaintiff drove out to the farm of Mark Fairchild to ascertain whether he might be interested in purchasing defendant's farm. Fairchild was not home but plaintiff discussed the matter with Mrs. Fairchild. About the first of April plaintiff took Mr. Fairchild and one of his sons to the defendant's farm to discuss the possibility of Fairchild purchasing the farm. However, no agreement was reached since Fairchild was unwilling to pay the price which defendant asked. On or about April 12, 1954, defendant himself sold the farm to Fairchild at a price of $10,400.

In this action plaintiff elected to stand upon the written contract and to seek recovery for the full commission of $800 in accordance with its provisions. Defendant contends that, in preparing the instrument and in presenting it to him for his signature, plaintiff practiced fraud in that the written contract did not conform to the actual agreement of the parties. Defendant further argues that, if the contract was in existence between plaintiff and defendant

when the latter sold the farm to Fairchild, it had been modified about 10 days prior to the date of sale by an oral agreement in which the plaintiff agreed to accept a lesser commission if the farm were sold at a price below $14,000.

■ It is well settled that a greater burden of proof is imposed upon those asserting a claim of parol modification of a written contract than is normally imposed upon those bearing the burden of proving other fact issues. Such a claim must be shown by more than a mere preponderance of the evidence; it must be made to appear by evidence that is "clear and convincing."[1] Similarly, where the object is to avoid a written instrument on the ground that one of the contracting parties was fraudulently induced to execute it upon the false representation that it expressed the agreement which the parties made, the evidence of fraud must be clear and convincing.[2] This requirement of proof by clear and convincing evidence is based upon sound policy consideration. It is recognized that charges of some types are inherently subject to fabrication, are easily made, and are difficult to disprove. It is for the purpose of safeguarding parties against whom such charges are made that the one making the charges is required to prove them by clear and convincing evidence.[3]

■ Our function in reviewing a case based upon the claim of fraud or of subsequent parol modification of a written contract, such as this, is to look to the evidence as a whole to determine whether the verdict of the jury was reasonably supported by evidence that is clear and convincing.[4]

[1]Kavanagh v. The Golden Rule, 226 Minn. 510, 33 N. W. (2d) 697; Dwyer v. Illinois Oil Co. 190 Minn. 616, 252 N. W. 837; Slawson v. Northern States Power Co. 201 Minn. 313, 276 N. W. 275; Butterick Publishing Co. v. Johnson, 201 Minn. 345, 276 N. W. 277; 4 Dunnell, Dig. (3 ed.) § 1777; 32 C. J. S., Evidence, § 1023.

[2]McCall v. Bushnell, 41 Minn. 37, 42 N. W. 545; Giller v. First Nat. Bank, 151 Minn. 414, 186 N. W. 816; First Nat. Bank v. Schroder, 175 Minn. 341, 221 N. W. 62; Gartner v. Gartner, 246 Minn. 319, 74 N. W. (2d) 809; 8 Dunnell, Dig. (3 ed.) §§ 3832, 3839.

[3]See, 32 Calif. L. Rev. 74; 60 Harv. L. Rev. 111.

[4]Kavanagh v. The Golden Rule, 226 Minn. 510, 33 N. W. (2d) 697; Butterick Publishing Co. v. Johnson, 201 Minn. 345, 276 N. W. 277; Giller v.

■ Considering the record before us in its entirety and taking the view of the evidence most favorable to the verdict, as we are bound to do,[5] we must determine whether the defendant has reasonably proved or established at least one of his two defenses of (1) fraud, or (2) the subsequent parol modification of the written contract, by evidence that is clear and convincing. If he has, then the verdict returned by the jury in his favor must be reinstated.

In the instant case the only evidence presented relating to the alleged fraud and subsequent parol modification of the contract is the testimony of the defendant himself. The testimony of a single witness, no matter what the issue or who the person, may legally suffice as evidence upon which to sustain a verdict.[6] The testimony of the defendant, however, contains inconsistencies and contradictions and is not very persuasive or convincing. Plaintiff claims that defendant read the contract before he signed it. This defendant denies and claims that he never read it until April 15 or 16, 1954, a few days after he sold the farm to Fairchild. However, in his answer he alleged that he did not discover the provisions of the contract, which at the trial he contended were fraudulently inserted, until the action was commenced. When he was confronted with this inconsistency, his answer was not frank but evasive. In direct ex-

First Nat. Bank, 151 Minn. 414, 186 N. W. 816; First Nat. Bank v. Schroder, 175 Minn. 341, 221 N. W. 62; McCall v. Bushnell, 41 Minn. 37, 42 N. W. 545; Slawson v. Northern States Power Co. 201 Minn. 313, 276 N. W. 275; John A. Stees Co. v. Willis, 151 Minn. 192, 186 N. W. 391; Gartner v. Gartner, 246 Minn. 319, 74 N. W. (2d) 809; see, also, Hartigan v. Norwich Union Ind. Co. 188 Minn. 48, 51, 246 N. W. 477, 478, where, in a case requiring proof by clear and convincing evidence, this court held that it would not, on appeal, "disturb the findings of the trial court unless they are manifestly contrary to the evidence viewed as the trial court should view it."

[5]Sorlie v. Thomas, 235 Minn. 509, 51 N. W. (2d) 592; Willmar Gas Co. Inc. v. Duininck, 236 Minn. 499, 53 N. W. (2d) 225; Kundiger v. Metropolitan Life Ins. Co. 218 Minn. 273, 15 N. W. (2d) 487.

[6]Benson v. Northland Transp. Co. 200 Minn. 445, 274 N. W. 532; Kavanagh v. The Golden Rule, 226 Minn. 510, 33 N. W. (2d) 697; Robinson v. Butler, 234 Minn. 252, 48 N. W. (2d) 169; 6 Dunnell, Supp. § 10343a; 7 Wigmore, Evidence (3 ed.) § 2034.

amination, when asked whether plaintiff read the contract to him before it was signed, his answer was "None of the fine print." In cross-examination he denied that plaintiff read the contract to him at all. When asked whether plaintiff explained the contract to him, as plaintiff claimed he had done, his answer was again evasive, being "I don't think so," and later "To the best of my knowledge, no."

Defendant testified that when plaintiff brought the Fairchilds out to see him early in April 1953 he did not believe plaintiff was "through" but rather believed plaintiff had a perfect right to deal for him under an alleged "verbal contract." Yet approximately 12 days later, when defendant sold the farm to Mark Fairchild, according to the latter's testimony, defendant said "we could just as well make the deal ourselves and leave Mr. Hentges out of it." At the trial it was defendant's claim that, at the time he sold the farm to Fairchild, plaintiff's "time was up," yet he testified that three or four days later he went to plaintiff's office to read the contract. He also concedes that sometime during the winter of 1954 he had checked forms used by other real estate agents in Madison and Canby for "comparison" and that he "talked to the Federal Land Bank people at Marshall," yet he insists that he did not ask to see the written contract until after the sale to Fairchild on April 12, 1954. When asked what led him to the conclusion that plaintiff's "time was up" when he sold the farm to Fairchild, defendant replied, "other cards" and then gave this significant answer:

"Q. So you were supporting your case at that time on other cards, not on this one, not on the contract you had signed, but on other cards that you have seen, is that true?

"A. Possibly."

Defendant's action in "comparing" other real estate contracts under the circumstances of the instant case in and of itself strongly indicates that at the time of the sale he was well aware that plaintiff was still entitled to his rights under their written contract of June 4, 1953.

Defendant's testimony regarding the alleged parol modification of the written contract is equally unsatisfactory. He first testified

that the oral contract providing for a reduction in plaintiff's commission in the event the sale was for less than $14,000 was made two or three days *after* plaintiff brought the Fairchilds out to his farm as prospective purchasers. Later he said that the agreement was made *before* plaintiff brought the Fairchilds out to the farm. Plaintiff denies that an oral agreement modifying the written contract was entered into at any time.

We shall not go into further detail. In these cases the written instrument itself becomes a strong "wall of evidence" and it should not be overcome by the unsatisfactory, inherently weak testimony of the defendant alone.[7] Counsel for defendant with commendable frankness both in his brief and upon the oral argument conceded that upon the testimony of the defendant standing alone he was inclined to agree with the plaintiff that "it would not be sufficient to meet the degree of proof required for the verdict to stand." A careful review of the record fails to reveal any inconsistencies in plaintiff's testimony or the testimony of other witnesses sufficient to support or to corroborate defendant's claim of either fraud or the parol modification of the written contract. It is not for us to pass upon the weight or credit to be given to the testimony of witnesses,[8] but bearing in mind the requirement that the evidence necessary to show either a parol modification of a written contract or that the contract was obtained by fraud must be clear and convincing, and in view of the ambiguities and inconsistencies in the evidence before us, we conclude that the trial court was right in setting aside the verdict and in granting judgment for the plaintiff.

Affirmed.

---

[7]Giller v. First Nat. Bank, 151 Minn. 414, 186 N. W. 816; First Nat. Bank v. Schroder, 175 Minn. 341, 221 N. W. 62; 8 Dunnell, Dig. (3 ed.) § 3839.

[8]First Nat. Bank v. Schroder, 175 Minn. 341, 221 N. W. 62.