**In the Matter of the Application for REINSTATEMENT OF Gary L. WILLIAMS as an Attorney at Law of the State of Minnesota.**

No. CX–79–50365.

Supreme Court of Minnesota.

Dec. 23, 1988.

Gary L. Williams, Roseville, pro se.

William Wernz, Director, Betty Shaw, Sr. Asst. Director, Lawyers Professional Responsibility, St. Paul, for respondent.

## OPINION

POPOVICH, Justice.

Gary L. Williams ("petitioner"), originally admitted in 1967, petitioned for reinstatement to the practice of law. Petitioner was suspended from the practice of law on June 5, 1981, because he was unable to assist in his defense of the disciplinary proceedings brought against him. On May 5, 1988, the matter was heard before a panel of the Lawyers Professional Responsibility Board, which recommended against reinstatement. We disagree and order reinstatement with conditions.

### I.

A petition for disciplinary action was filed against petitioner, Gary L. Williams, on July 27, 1979. On July 31, petitioner entered into a stipulation and was suspended from the practice of law pending final determination of the disciplinary proceedings. He filed a response to the petition for disciplinary action on September 24, 1979. On January 29, 1981, petitioner amended his response to request an indefinite suspension from the practice of law because he was unable to assist in his own defense. A stipulation was agreed to by petitioner and the Director of the Lawyers Professional Responsibility Board suspending petitioner from the practice of law until such time as he might seek reinstatement or become capable of assisting in his defense. Upon this stipulation, petitioner was suspended by order of this court on June 5, 1981, until such time as he would be competent to assist in his defense.

A petition for reinstatement was filed by petitioner on July 7, 1987. Petitioner alleged he was ready to pursue reinstate-

ment and the disciplinary proceedings leading to resumption of the practice of law. After reviewing the petition for disciplinary action against petitioner, the Director determined that even if all of the allegations contained in the petition could be proven, the misconduct would not warrant more than an eight-year suspension. Petitioner admitted to the following rule violations and acts of misconduct:

1. He misrepresented to his client the status of a custody matter he was handling for her;

2. His claim of $300 as his fee on a client's bankruptcy petition did not constitute the entire consideration given to him by the client;

3. He informed the bankruptcy trustee that there would not be any tax refunds for his client. Shortly thereafter the bankruptcy estate was closed. Later, when it became apparent that there would be substantial tax refunds petitioner did not seek to reopen the bankrupt estate or inform the court or trustee of the refunds. Petitioner kept the client's tax refunds; and

4. He failed to file timely state and federal income tax returns for tax years 1976 through 1984.

The Director agreed to withdraw all other allegations denied by petitioner. The Director and petitioner agreed that if the panel found petitioner was morally, emotionally and psychologically fit to resume the practice of law, a stipulation between the Director and petitioner would be submitted admitting the acts of misconduct and rule violations and no further discipline would be imposed.

A hearing was held on May 5, 1988, before a panel of the Lawyers Professional Responsibility Board pursuant to Rules 18(c) and 28(d), Rules on Lawyers Professional Responsibility (RLPR). On May 13, 1988, the panel filed its recommendation that petitioner had not proven psychological fitness to resume the practice of law and reinstatement be denied.

## II.

Petitioner argued in his brief and at oral argument that the Director has the burden of proof on all issues related to petitioner's initial disciplinary hearing other than his mental condition. As such, petitioner contends it is not his burden to prove moral character since none of the disciplinary allegations brought against him in 1979 were proven because the proceedings were suspended.

Under the current rules, petitioner's indefinite suspension due to inability to assist in his own defense would be governed by Rule 28(b)(2), RLPR. Under this rule, we may reinstate a lawyer to active status upon a showing that the lawyer is fit to resume the practice of law. Rule 28(d), RLPR. Petitioner was indefinitely suspended in 1981, however, prior to the passage of Rule 28 in 1982.

Petitioner is correct that under ordinary circumstances if he would provide sufficient proof that he is able to assist in his defense of the original disciplinary proceedings, the Director would bear the burden of proving the allegations against him raised in the original complaint. However, at the panel hearing petitioner admitted to four of the allegations raised in the original complaint. The Director agreed to withdraw any additional allegations currently denied by the petitioner. The Director also determined that even if all the allegations of misconduct were proven, the misconduct would not warrant more than the eight-year suspension which petitioner had already served. Therefore, as a result of these admissions by both parties, there is no longer any controversy surrounding the disciplinary allegations raised in the 1979 petition for disciplinary action.

Petitioner is now placed in a role similar to that of an individual who has been indefinitely suspended as a result of disciplinary violations and must seek reinstatement to resume the practice of law.[1] This situation

1. This court has never specifically addressed the standard of proof required where an attorney is indefinitely suspended due to his inability to assist in his own defense, subsequently admits to a series of rule violations, and then petitions for reinstatement. Under the current disability

is analogous to *In re Disciplinary Action Against Pyles*, 421 N.W.2d 321 (Minn. 1988). Pyles was indefinitely suspended as the result of serious professional violations, the majority of which he admitted. *Id.* at 323. As mitigating circumstances, Pyles claimed the various instances of misconduct were the direct result of a psychological disability. We held that Pyles failed to show by "clear and convincing" evidence his acts of misconduct were caused by his psychological problems. *Id.* at 325. Nevertheless, as one of the conditions of his reinstatement, we said, "Pyles must prove to this court, by clear and convincing evidence, that he has fully overcome his psychological disability." *Id.* at 327, n. 5.

Petitioner admitted in his brief and at oral argument that he bears the burden of proving he is psychologically fit to resume the practice of law. At the panel hearing petitioner expressed his agreement with the standard of proof used to assess his present moral, emotional and psychological fitness:

> Mr. Gernes: All right. As I look at the matter, the central question here you mentioned psychological fitness, but I know what we'll be addressing today using the Rule is whether or not you, Mr. Williams, through this hearing have proved by clear and convincing evidence your present moral, emotional and psychological fitness to practice law. Do you have any disagreement with that being the standard in this case?
>
> Mr. Williams: I have no problem with that.

Petitioner must now show by clear and convincing evidence that he has met this burden.

### III.

In support of his petition for reinstatement, petitioner presented testimony by psychiatrist Dr. Lowell Wigdahl and a psychological testing evaluation by Donna Witthaus. Dr. Wigdahl first saw petitioner on April 18, 1979. Before that date petitioner had seen several other physicians. Dr. Wigdahl treated petitioner regularly in psychotherapy sessions from April to November, 1979. He continued to see petitioner sporadically until July 16, 1980. At that time Dr. Wigdahl diagnosed petitioner as suffering from clinical depression and also found he had some passive, recessive personality traits.

Dr. Wigdahl met again with petitioner in May 1986 and April of 1988. Dr. Wigdahl also examined the psychological tests, the Minnesota Multiphasic Personality Inventory (MMPI), and the Rorschach test administered by Ms. Witthaus. According to Ms. Witthaus' report the tests indicated "a normal, essentially normal profile * * *. It's essentially a profile of the individual who's normally well-educated and has aesthetic answers." Dr. Wigdahl pointed out the "Rorschach test does not suggest any underlying ego weakness or impaired reality testing." Based on this testing, his visits with petitioner and petitioner's medical history, Dr. Wigdahl concluded that there was nothing at the present time indicating petitioner would not be capable of handling a practice of law. In a letter attached to the petition for reinstatement Dr. Wigdahl stated that "[petitioner] was no longer depressed and he seems to have his life in order. I told him he should consider reinstating his law practice if he so wished, but to be careful no[t] to overload himself." Dr. Wigdahl considered petitioner to be emotionally stable.

Petitioner also testified. Since his suspension in 1981 petitioner worked as a roofer and an energy auditor for Northern States Power Company. He has not had problems in either of these jobs. Petitioner also completed his delinquent tax returns and since that time all of his returns have been filed in a timely manner. In addition, petitioner handled this matter before the Board of Professional Responsibility and this court pro se.

---

status rule, Rule 28, RLPR, reinstatement proceedings are governed by Rule 18. Rule 18 dictates that suspended, disbarred or resigned attorneys must show by clear and convincing evidence that they are now fit to resume the practice of law. *Matter of Discipline of Thompson*, 365 N.W.2d 262, 264 (Minn.1985).

Petitioner also testified he divorced his first wife since his suspension and subsequently remarried. Dr. Wigdahl commented that "his second marriage seems to be quite stable. It seems to be quite a different relationship than the first marriage," and that much of the stress which contributed to petitioner's illness was caused by his home environment with his first wife.

As to petitioner's moral character, he admitted many of the allegations contained in the original petition for disciplinary action. At the panel hearing petitioner admitted that he did something wrong in each of those cases and he would not make the same mistakes again. He is not chemically dependent and suffers no alcohol problems. Dr. Wigdahl also testified that "there's nothing from an ethical point of view that I would question."

## IV.

On the basis of the medical testimony submitted and the behavior of the petitioner since his suspension in 1981, we order petitioner's reinstatement to the practice of law upon the following conditions: (1) petitioner is placed on probation for a period of four years; (2) petitioner is restricted from the solo practice of law; (3) petitioner must successfully complete the full bar examination required of applicants for admission to the practice of law in this state, including the written exam on the subject of professional responsibility; and (4) petitioner must comply with all requirements for continuing legal education which he would have had to meet had he been practicing during the period of time he was suspended.[2] These conditions were contained in the Director's report to the panel dated January 6, 1988.

Petition for reinstatement granted.

SIMONETT, KELLEY and COYNE, JJ., dissent.

SIMONETT, Justice (dissenting).

This case comes to us in a unique posture. Ordinarily, when a disciplinary suspension has expired and its terms met, reinstatement follows as a matter of course. *See In re Kimmel,* 322 N.W.2d 224 (Minn.1982), followed by *In re Kimmel,* 347 N.W.2d 52 (Minn.1984). Here, however, there are two complications: (1) the length of the suspension, now over 9 years, and (2) the fact that the suspension was originally ordered, not for the misconduct now adjudged, but for reasons of mental illness. Under the circumstances here, I agree that for reinstatement petitioner Williams must show by clear and convincing evidence that he is now mentally and morally fit to resume the practice of law.

Petitioner agrees with the Director's recommendation that reinstatement, if granted, be conditioned on successful completion of the bar examination and continuing legal education requirements, no solo practice, and at least 4 years' probation. The requirement to take the bar examination is imposed not as a disciplinary sanction but to assure professional competence after a long absence from practice. *Cf. In re Strand,* 259 Minn. 379, 381, 107 N.W.2d 518, 519 (Minn.1961) (other factors established professional competence).

The panel made no finding on petitioner's moral fitness, basing its adverse recommendation solely on its finding that petitioner's psychological problems are still present and he has not established his ability to withstand the pressures of law practice. I do find it troubling, however, that petitioner prefers to characterize his misconduct as mistakes rather than lapses of moral judgment. This is not, however, a reinstatement sought after disbarment (where the moral dereliction is generally found to be greater), and I believe petitioner has learned his lesson.

The more difficult question is whether petitioner has adequately proven his mental fitness. Only two witnesses testified at

---

2. This court has already approved of an order similar to this in *Matter of LaRocque,* 295 N.W. 2d 97 (Minn.1980). There, we held that a stipulation in which an attorney conceded charges against him, waived all procedural rights, and agreed to indefinite suspension with the right to apply for reinstatement after one year upon proof by clear and convincing evidence that he was psychologically fit to practice law and had met all continuing legal education requirements, would be approved.

the panel hearing, petitioner and his doctor. Mr. Williams recounted the problems at home and at the office which brought on his depression and led to loss of his job as an in-house trial attorney for an insurance company. Since his suspension Mr. Williams has, as he says, "gone through some pretty tough times," and yet, as he also says, he has recovered and kept his mental health. His first marriage was dissolved, there were debts to pay, children to be helped financially, and the set-back of a serious back injury. Nevertheless, petitioner tells us he has continued to be gainfully employed. He has remarried. He has resolved on his own his income tax problems, negotiating with the Internal Revenue Service and redoing the tax returns after his ex-wife refused to sign joint returns. He explains how he has come to terms with the rigid work ethic of his younger years. He has acted pro se in these proceedings. The Director points out that Mr. Williams did not pursue this reinstatement proceeding with all due diligence, suggesting this indicates the depression may still be active. It appears, however, any delay was more likely related to matters of finances and uncertainty of career plans. It appears, too, that Mr. Williams' immediate reason for seeking reinstatement is as much to establish his return to mental fitness as it is to practice law. For a second witness, petitioner called his psychiatrist who testified that Mr. Williams had overcome his depression and was now psychologically capable of practicing law. One cannot forecast the future, but the prognosis looks good.

Nevertheless, I would remand to the panel for the taking of further evidence. Petitioner must not only show fitness to return to the practice of law, but the proof must be clear and convincing. All we have here is petitioner's testimony, plus the testimony of his psychiatrist which is based mostly on the history petitioner gave him. For example, the psychiatrist assumes the second marriage is a stabilizing influence but he has not talked to the wife nor has she testified. It is true the MMPI and the Rorschach tests were normal, but these tests are not enough; they require validation.

This is the type of case where, it seems to me, petitioner needed to call collaborating witnesses, perhaps members of his family, his employer, or others, who could confirm his story. Petitioner chose not to call other witnesses because, he says, he felt only his mental competence, not his good character, was at issue. But even if this were so, other witnesses are needed here if proof of mental competence is to be clear and convincing. Before we reinstate, more than petitioner's word that he is well is required. The requirement of clear and convincing proof reflects the societal values involved and is "more than an empty semantic exercise." *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979), quoting *Tippett v. Maryland*, 436 F.2d 1153, 1166 (4th Cir.1971). At stake here is the protection of the public and the integrity of the profession. Because of the procedural quirks of this case, rather than affirm the panel's recommendation, I would remand for further proceedings. If on remand the needed supportive proof is produced, then, it seems to me, petitioner is clearly a candidate for reinstatement.

KELLEY, Justice (dissenting):

I respectfully dissent. I conclude that the evidence offered by petitioner falls far short of establishing by clear and convincing evidence, as we have defined that term in *Weber v. Anderson*, 269 N.W.2d 892, 895 (Minn.1978) and *Kavanagh v. The Golden Rule*, 226 Minn. 510, 517, 33 N.W.2d 697, 701 (1948), that he is now psychologically and emotionally fit to resume the practice of law to the extent that he can handle stress associated with that profession. Therefore, I would follow the recommendation of the panel of the Lawyers Professional Responsibility Board to not at this time grant reinstatement.

COYNE, Justice (dissenting).

I join in the dissent of Justice KELLEY.