ZENITH BOX & LUMBER COMPANY v. NATIONAL UNION FIRE INSURANCE COMPANY AND OTHERS.[1]

January 9, 1920.

No. 21,444.

**Insurance — blanket policies for full amount on each place.**

1. Certain policies of insurance on forest products at eight locations "on Saari Brothers Railroad" are *held* to be blanket policies, not prorated among the specific locations, but covering each to the full amount.

**Same — construction of policies.**

2. Such policies are also *held* to cover products adjacent to locations specified, not piled or banked, but ready for loading, and left for the purpose of being loaded without being banked. Such products were "situated" at such locations within the meaning of the policies.

**Reformation of policy.**

3. An insurance agent, who, without the knowledge of the insured, procures another agent to write the risk, dividing commissions with him, is not authorized, as an agent of the insured, to make terms, or to bind the insured by stipulations not embodied in the policies and not known to him, and the insurer is not entitled to have the policies reformed to conform to terms agreed upon between the insurance agents.

Action in the district court for St. Louis county to recover on five fire insurance policies. The facts are stated in the opinion. The case was tried before Dancer, J., who made amended findings and ordered judgment against the National Union Fire Insurance Company, the West-

[1]Reported in 175 N. W. 894.

chester Fire Insurance Company, and the Germania Fire Insurance Company in specified amounts. From an order denying their motion for amended findings or for a new trial, defendants appealed. Affirmed.

*Fryberger, Fulton & Spear* and *Nathan H. Chase,* for appellants.

*Larson & Marsch,* for respondent.

HALLAM, J.

1. Action to recover on five policies of insurance, one issued by each of defendants, on timber products then owned by Saari Brothers, but later sold to plaintiff. Saari Brothers were engaged in logging operations in St. Louis county. A special agent of the Westchester Fire Insurance Company went over the lands and estimated the timber, brought some information to Mr. Kriedler of Kriedler-Doyle Company, agent for the Westchester Company, and told him that Saari Brothers desired insurance on their products. He also solicited Mr. Jacob Saari to call up Mr. Kriedler, which Mr. Saari did. Information was given by Saari as to material at eight locations, giving value at each, aggregating $66,549, and Kreidler-Doyle Company issued a policy insuring Saari Brothers at 90 per cent of said value, or $59,893.

Later the Westchester Company ordered Kreidler-Doyle Company to cancel this policy. Thereupon Kreidler, without the knowledge of Saari Brothers, went to McGregor-Bradley Company, insurance agents, and procured them to write the five policies here sued on, in companies of which they were agents, Kreidler receiving one-half of the commissions paid by the companies therefor. The insurance aggregated $59,893. Riders designating property insured and the amount and terms of insurance were attached to each policy. They are all like the following except as to the figures at the top:

"$50,000.00 on stock, consisting chiefly of lumber, shingles, pickets, lath, ties, poles, posts, pulp-wood, cord wood, slabs, logs, and all forest and timber products of every description, manufactured, unmanufactured and in process of manufacture; their own or held by them in trust or on commission or sold but not delivered or removed, or where the legal or equitable title is in said assured or where such stock has been produced or partially produced under contract and which contained the provision

or understanding that title passes to the assured although a final payment may not have been made, while situated at the following described premises, all on Saari Brothers Railroad, in St. Louis County, Minnesota, to-wit:

(1)  $ 1,889.00  Between Camp No. 1 and Summit.
(2)   14,353.35  Between Camp No. 1 and Section 33 Spur.
(3)    9,144.45  Between Camp No. 1 and Kickback.
(4)   10,000.00  At Kickback Spur Proper.
(5)    1,266.65  Between Kickback Junction and North Line Section 7.
(6)    8,155.55  Between North Line Section 7 and County Road.
(7)   17,740.00  Between County Road and Waterhen (creek).
(8)    4,000.00  Between Waterhen and Camp 1 in Sections 19 and 20.

$66,549.00  Total.

"Should the property hereby insured be or become separated 50 feet or more by streets, roadways, alleys, water spaces or other spaces (not commonly used for piling ground or temporarily vacated), then it is hereby agreed that such separation shall constitute a separate division or location and the following shall then be considered a part of this policy."

"AVERAGE CLAUSE.—It is hereby agreed in case of loss this policy shall attach in or on each building, division or location in such proportion as the value in or on such building, division or location bears to the aggregate value of the property insured."

"Additional concurrent insurance is hereby permitted."

"CO-INSURANCE CLAUSE:—In consideration of the acceptance by the assured of a reduction from the established rate of 10 per cent to 5 per cent it is hereby agreed that the assured shall maintain insurance during the life of this policy upon the property hereby insured to the extent of at least 90 per cent of the actual cash value at the time of the fire, and that failing so to do, the insured shall, to the extent of such deficit, bear his, her or their proportion of any loss, and it is expressly agreed that in case there shall be more than one item or division in the form of this policy this clause shall apply to each and every item."

Fires occurred at locations 2, 3, 6, 7 and 8. The total value of material destroyed was $55,543.19. The court, trying the case without a jury, construed the policies as giving blanket insurance, that is, insurance not

prorated among the specific divisions, but covering each division to the full amount, and, after applying the average clause, gave judgment to plaintiff for $43,027.24.

When the language of the policies is all considered, this seems to be the fair interpretation of them. Each provides for a stated amount of insurance, less than the total of the specific values given, each specifies what shall constitute separate "divisions or locations," and the average clause and that clause alone, in each policy, specifies how the total amount of insurance is to be apportioned among such divisions or locations.

But if the language is in doubt, the attending circumstances confirm the trial court's construction.

Each policy had indorsed thereon, in typewriting, when delivered by the agents, the words: "Floater form." This word "floater" is commonly used synonymously with the word "blanket."

The rate charged was the highest rate charged for insuring this character of property, viz. 10 per cent, reduced by reason of coinsurance to 5 per cent, and this is the rate charged for blanket insurance, but far in excess of the rate charged for specific or prorated insurance.

Where policies are written covering several items and the amount is to be prorated it is customary to so stipulate, as by stating that the insurance is a "prorata share" of the amount of the policy upon each item or location. The agents who wrote these policies were experienced agents and understood this practice, but no such language was used in any of these policies.

Defendant contends that this construction renders useless the description and enumeration of the locations where the property was situated. It is true that with such a construction this descriptive matter is not of vital importance, yet it is not senseless to describe the locations with this detail. We think the language quite as important as is much of the verbiage contained in the first paragraph of the rider.

Defendant contends that with this construction the amounts set down opposite each location mean nothing. Mr. McGregor, of the company that wrote the policies, testified that he understood the figures were the "values" of the property at the respective locations. It was not necessary that these separate values be inserted in the policies, but, since the agents for defendants saw fit to insert the figures for that purpose, we need not concern ourselves with the importance of their so doing. It is not now

claimed that the insurance was for these specific amounts at each location. The claim is that these amounts indicated the proportions of insurance upon each location, for example, 1,889/66,549 upon the first location. The policies do not so provide. This seems to us a strained construction of their language.

The contention of defendants that the "average clause" was only intended to apply to separations of 50 feet or more within each of the eight locations mentioned, and that the policies were "blanket" as to each location, but not as to the whole, does not seem to us to be borne out by any language of the policies. We do not sustain the contention.

Taking into account the well recognized principle that in construing a policy of insurance, prepared by the insurer, all reasonable doubt must be resolved in favor of the insured, DeGraff v. Queen Ins. Co. 38 Minn. 501, 38 N. W. 696, 8 Am. St. 685; Anoka Lumber Co. v. Fidelity & Casualty Co. 63 Minn. 286, 65 N. W. 353, 30 L.R.A. 689, we have no difficulty in determining that the trial court properly construed these policies as blanket policies.

2. There were at each location certain products banked on the landings of said railroad and within 300 feet of said railroad on each side. Concededly the policies covered these products. There were also on the premises of Saari Brothers at locations 7 and 8, adjacent to the railroad, and extending for a distance of not to exceed one-quarter mile on each side and at no point separated from the other property along the railroad by spaces of 50 feet, large quantities of forest products of the kind described in the policies, but not piled or banked. The court held that the policies covered these products. We agree with this. These logs had been cut and swamped upon the premises, were ready for loading, and were left for the purpose of being loaded without being banked. We think they were "situated" at locations 7 and 8 within the meaning of these policies. The language is general; the extent of the location is not defined; landings or piled logs are not mentioned at all. These logs or some of them, at least, were included in the total figures given by Saari to the insurance company.

Precedent may not help much in applying these policy contracts to the peculiar facts of this case, but we think the authorities tend to sustain

this contention. Pettit v. State Ins. Co. 41 Minn. 299, 43 N. W. 378; Burnam v. Banks, 45 Mo. 349.

3. Defendant contends that if the policies bear the construction we place upon them, then they fail to express the real agreement of the parties and should be reformed. It is not contended that any different agreement was made with Saari Brothers personally, or they or plaintiff knew until after the fire that any other agreement was said to have been made. The claim is that Kreidler, when he placed the insurance through the Mc-Gregor-Bradley Company, agreed with them that the policies issued should provide that the insurance should be prorated among the eight locations mentioned in proportion to the amounts appearing in the schedules, with a coinsurance clause to be applied to each separate location, and that in so doing he acted as the agent of Saari Brothers. There is no claim that he was given any such express authority. The claim is that when a broker "or even an insurance agent requests insurance for a company which he does not represent, he is acting as the agent of the assured and not of the insurer," and that therefore defendant should have been permitted to prove this alleged agreement between Kreidler and McGregor-Bradley Company, and that the policies should be reformed to incorporate such provisions into their terms. This contention does not seem to require extended discussion. It is a matter of common knowledge that appointed agents of insurance companies, on procuring applications for insurance, not infrequently, on their own initiative, procure agents for other companies to write part or all of the risk. To hold that an insurance agent, by so doing, becomes a general agent of the insured, vested with power to bind the insured by terms not embodied in the policy and terms of which the insured never knows, seems to us impossible. Fredman v. Consolidated F. & M. Ins. Co. 104 Minn. 76, 116 N. W. 221, 124 N. W. 608, does not point towards such a conclusion. In that case the court held that the statutes of this state, citing sections which are now sections 3297, 3322, 3607, G. S. 1913, make "every insurance agent or broker who acts for another in negotiating a contract of insurance" the agent of the insurance company for the purpose of collecting or securing the premiums, but that "except as thus declared, the powers of an insurance broker are not determined by the statute, but are left to be determined by contract between the parties," and that the statutes cited

do not purport to define the scope of the agency of the broker. It was held that a broker had no implied authority to bind the insurer by agreements not embodied in the policy written. It is just as clear that a broker has no implied authority to bind the insured by agreements not embodied in the policy delivered to him. Clearly there is no statute which, either expressly or by implication, makes an insurance broker the general agent of the insured.

Kreidler received his pay from the defendant insurance companies. There is no proof or offer of proof that he was authorized to enter into any contract for Saari Brothers of any different tenor from that embodied in the policies issued to them. The court properly rejected the proffered evidence of what transpired between the insurance agents among themselves.

Order affirmed.