MARJORIE F. BUCK AND ANOTHER v. PATRONS CO-OPERA-
TIVE FIRE INSURANCE COMPANY OF ANOKA,
RAMSEY AND HENNEPIN COUNTIES.
CHARLES E. SMITH, INTERVENER.[1]

May 24, 1929.

Nos. 27,370, 27,517.

*Junell, Dorsey, Oakley & Driscoll* and *Merrill Buffington,* for appellants Marjorie F. Buck and Albert K. Verlo.

*Carleton F. Boeke,* for intervener.

*Ellsworth, Clinite, Anderson & Dills* and *E. L. Dills,* for respondent.

[1]Reported in 225 N. W. 445.

STONE, J.

Defendant is a township mutual fire insurance company, and the action upon a policy of fire insurance issued August 6, 1925, to Margaret (Mrs. George) Thayer upon her dwelling house and thereafter, by the rider hereinafter referred to, made payable to plaintiffs Buck and Verlo as mortgagees. Intervener, Smith, as the administrator of the insured, seeks to recover $2,000 of insurance on household goods. A verdict was directed against him upon the theory that there was no such insurance. Plaintiffs Buck and Verlo, as mortgagees, had verdicts which, exclusive of interest allowed by the jury, aggregated $6,000. Upon an alternative motion for judgment notwithstanding the verdicts or a new trial, judgment was ordered for defendant, from which plaintiffs appeal. Judgment also was entered for defendant as against the intervener, and he also appeals.

The fire occurred April 11, 1927. The defense, successful below, was that before the fire and on June 10, 1926, the insured had by deed conveyed the land upon which the insured dwelling was situated to Maple Grove Silver Fox Farm Company. Such a conveyance was made. But for the reasons about to be stated it does not decide the case for defendant.

The policy contained the following provisions, which for convenience of reference we shall designate by the letters A, B and C.

A. "This entire policy unless otherwise provided by agreement endorsed hereon * * * shall be void if the subject of insurance be a building, and any change other than by death of the insured take place in the interest, title or possession thereof * * *."

B. "Whenever this company shall be liable to a mortgagee for any sum for loss under this policy, for which no liability exists as to the mortgagor, or owner, and this company shall elect by itself, or with others, to pay the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the companies interested, upon such payment, the said mortgage, together with the note and the debts thereby secured."

Then, after a provision for cancelation upon request of the insured or by the insurer, the policy proceeds as follows:

C. "If this policy is or shall be hereafter made payable to a mortgagee of real estate, and such mortgagee shall have or acquire knowledge of any fact or facts whereby this policy is or shall hereafter become void, as hereinbefore provided, or in case of any change of interest, title, possession or occupancy, or any increase of hazard shall come to the knowledge of such mortgagee, then and in either event such mortgagee shall forthwith notify this company thereof by registered letter, and failing so to do this policy shall become null and void as to him."

October 5, 1925, defendant, by its secretary, attached to the policy a "mortgage clause" making loss if any payable to plaintiffs Buck and Verlo, as first and second mortgagees, or their assigns, as their interest might appear, "subject to the stipulations, conditions and provisions contained in this policy." The defendant, being a township mutual, is governed by the statutes, specially applicable to them. G. S. 1923 (1 Mason, 1927) § 3646, et seq. So defendant was not required to issue its fire policies in the standard form. G. S. 1923 (1 Mason, 1927) § 3670. We do not deem it important that the policy in suit did not contain the so-called union mortgage clause of the standard policy, to the effect that when a fire loss is payable to a mortgagee no act or default of any other person shall affect his rights to recover in case of loss.

For defendant, the argument is that clause A, above quoted, which in general language avoids the policy upon change of ownership not consented to by the insurer, decides the case in its favor. (The main fact issue at the trial was whether defendant had waived its right to avoid the policy.) That argument ignores clause B, which in particular language covers the case of a mortgagee to whom a loss has been made payable. Clause A, given literal effect, would have the result claimed. But clause B contemplates cases where defendant may be liable to a mortgagee but not to the original insured. Following that is clause C, which provides particularly for the rights of the mortgagee in case of "change of interest, title,

possession or occupancy." The obligation imposed upon the mortgagee in such case arises only upon his acquisition of knowledge of such "fact or facts" and is forthwith to "notify this company thereof by registered letter." In default of such notice, required only after such knowledge, "this policy shall become null and void" as to such mortgagee. If clauses A and C are taken literally, an ambiguity results, for in the case of change of ownership, not consented to by the insurer and not known to the mortgagee, clause A avoids while clause C saves the insurance to the mortgagee. Such ambiguities, if not otherwise removable, are to be resolved against the insurer. 26 C. J. 72-74; Zenith B. & L. Co. v. National U. F. Ins. Co. 144 Minn. 386, 390, 175 N. W. 894. In case of conflict beween general and particular language in a contract the particular controls. Quimby v. Shearer, 56 Minn. 534, 58 N. W. 155. But every provision, whether general or particular, is to be given reasonable effect if possible. So it must be concluded that *general* clause A was designed to reach only the owner or insured; and that *particular* clause C (introduced as it is by clause B, recognizing so explicitly that there may be liability to a mortgagee without any to the insured owner) was intended to control as between the insurer and mortgagee. This interpretation gives reasonable and harmonious effect to all the provisions of the contract. It does not make any of them surplusage, whereas if clause A controls both the rights of insured owner and mortgagee, clauses B and C are meaningless. Yet the contracting parties must be considered as having used them for a purpose. We consider their intention, and that is what we must ascertain, to have been as above stated. It follows that plaintiffs, as mortgagees, were entitled to recover according to their respective interests, and the verdicts in their favor should not have been disturbed.

It is argued for the defense that the issue thus resolved for plaintiffs was beyond the theory upon which the case was tried. True, the record does not affirmatively indicate, by motion for directed verdict, request for instructions or otherwise, that when the case went to the jury plaintiffs urged that they were entitled

to recover in any event. But the issue was of law and not of fact and so not for the jury. It was presented by the pleadings. Plaintiffs did not have to move.for a new trial and so did not have the opportunity to specify error afforded by such a motion. Judgment was ordered against them notwithstanding verdicts to which they were entitled on the record. With the case in such a posture, we cannot say that an issue of law made by the pleadings is beyond the theory of the trial unless there is something in the record affirmatively showing that to be the fact. Here the pleadings present the issue. There is nothing to show that plaintiffs, by waiver or otherwise, have lost their right to have it considered and decided. So we cannot agree that it is beyond the theory upon which the case was tried or that plaintiffs are shifting theory in urging the point here.

■ The policy as originally issued insured the dwelling for $8,000. The verdicts were on the basis of an insurance for $6,000 only, but that was because under defendant's by-laws there could be no recovery for more than two-thirds the value of the insured dwelling. The loss was total, but there was an issue as to the value of the house at the time of the fire and the jury must have considered it worth not to exceed $9,000. His conclusion that the insurance on the dwelling remained at $8,000, the figure stated in the policy, explains the conclusion reached by the learned trial judge in directing a verdict against intervener. The latter's claim is that the insurance on the house was reduced to $6,000 by an amendment of the policy which put $2,000 on household goods. (The insured, Mrs. Thayer, lost her life in the fire which destroyed her home.) In support of his claim, intervener introduced a letter from defendant's secretary under date of March 27, 1926, reading as follows:

"In reply to your letter we find that you have no insurance on household furnishings, etc. We also find that your house is insured for $8,000.00 while we are only allowed to take $6,000.00 on any one building, we will reduce the insurance $2,000.00 on dwelling and add that amount to household furnishings, we ask you to send us your Policy so that we can make that change."

Concurrently with the writing of that letter, defendant's secretary, Mr. Evans, made notations on the application for the policy in his files indicating the change suggested in his letter. In that connection, he testified that he did make the change on the application "but the policy was never submitted to me to be renewed." Counsel for intervener, frankly conceding that in order to sustain his claim there must be proof of a new contract between insured and defendant for the shifting of $2,000 of insurance from dwelling to contents, argues that the letter above quoted indicates that an offer had been made by the insured to that effect and that the letter is an acceptance of it.

We cannot follow him to that extent. There is nothing to show that the letter from the insured was not a mere inquiry or suggestion. There is nothing permitting the determination that it was an offer and so capable of being made into a contract by mere acceptance. We can agree that the letter itself was an offer from insurer to insured. But there we must stop, for there is no evidence that the insured accepted the offer. Prescott v. Jones, 69 N. H. 305, 41 A. 352. She did not send in her policy or do anything else to have it changed. The burden of proof was on intervener, and it could not be "borne by proof of ambiguous transactions from which one party might infer that the original contract was still in force and the other that it had been changed. In such a case no mutual agreement would result." N. W. F. & M. Ins. Co. v. Connecticut F. Ins. Co. 105 Minn. 483, 484, 117 N. W. 825. We conclude that there was no proof of the new and changed contract necessary to sustain the claim for the intervener and that in consequence the direction of a verdict against him was proper. We do not overlook letters written by counsel for defendant after the loss urged as admissions that there was $2,000 of insurance on the household goods. Construed in the light of circumstances, those admissions go no further than recognizing that there might be such a claim. They are not admissions of the ultimate fact. Recognizing the existence of intervener's claim, they do not admit that it is well-founded.

On the appeal of plaintiffs, the judgment must be reversed with directions to enter judgment for them and against defendant on the verdicts. On the appeal of the intervener, the judgment for defendant is affirmed.

So ordered.