## M. J. MERICKEL AND ANOTHER v. ERICKSON STORES CORPORATION.

95 N. W. (2d) 303.

February 27, 1959—No. 37,589.

 

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *William R. Nelson,* for appellants.

*Dorsey, Owen, Scott, Barber & Marquart* and *Henry Halladay,* for respondent.

MATSON, JUSTICE.

Appeal from a judgment entered in an action of unlawful detainer pursuant to a directed verdict of not guilty for defendant.

Plaintiffs and defendant corporation own tracts of land parallel to and adjoining one another in southeast Minneapolis, where Central Avenue and East Hennepin Avenue meet. On November 6, 1956, plaintiffs leased a 20-foot strip of their land to defendant for a term of 20 years. The lease provided that defendant was to construct a building as described by a letter dated November 5, 1956, and a plot plan incorporated into the lease. This letter set forth the parties' agreement as to the details of the building defendant was to build. The plot plan showed that the building was to be 45 feet by 20 feet in size. One-half of the building, that is, the southerly 10 feet, would be on defendant's property and the other one-half of the building would be on the strip leased to defendant by plaintiffs. Defendant was to use the one-half of the building on its own property, and have service station driveways over the strip leased to it by plaintiffs while the other half of the building was to be used by plaintiffs or their tenant.

The letter of November 5, 1956, signed by both parties provided that plaintiffs authorized as a first step in construction *immediate* commencement of the razing of plaintiffs' drive-in building then standing. Construction work did begin immediately. On or about November 11, 1956, plaintiffs asked defendant if it would agree to build plaintiffs' half of the building 4 feet wider, i. e., making plaintiffs' portion a 14 x 45-foot building rather than the originally planned dimension of

10 x 45 feet. Plaintiffs offered to pay for the four-foot expansion (a basement was also to be added) by paying "Whatever it cost them." Drawings for the 24-foot-wide building were prepared.

New trenches were dug for footings for the additional 4 feet. New footings were laid. The construction work continued until November 27, 1956, when a meeting was held in defendant's office among Alfred and Arthur Erickson (of defendant corporation), M. J. Merickel (plaintiff), Roger Barringer (plaintiffs' tenant), John Hogenson (defendant's construction engineer), and others. A vigorous dispute arose as to whether plaintiffs' tenant was going to install stools for indoor seating for the service of food in his 14-foot portion of the building. The Ericksons objected to the use of stools. M. J. Merickel said he and his tenant could do whatever they pleased with their portion of the building. The Ericksons threatened to stop working on plaintiffs' portion of the building unless plaintiffs and their tenant agreed not to install indoor stools.

Work on plaintiffs' portion of the building was stopped. Merickel was told by defendant's foreman at the construction site that he had orders not to do any work on plaintiffs' portion of the building.

On November 28, 1956, plaintiffs served a notice of default on defendant and waited for 30 days as required by the lease. Defendant neither replied to the notice of default nor recommenced work on plaintiffs' portion of the building, but did complete its own portion. Plaintiffs later employed another contractor to complete its portion of the building at its own expense.

Thereafter, this action for unlawful detainer for the recovery of possession of the 20-foot strip of land leased to defendant was instituted. Following the introduction of plaintiffs' evidence, defendant moved for a directed verdict. The motion was granted, the trial court being of the opinion that as a matter of law plaintiffs failed to prove there was an enforceable oral modification of the written lease since it appeared that costs for the 24-foot building had not been figured (that is, the parties had not mutually agreed as to how much extra plaintiffs were to pay) and there was a question as to whether or not completed plans for the extended building had been submitted and agreed upon. The court also held, *as a matter of law,* that the parties had *mutually*

*abandoned their original written agreement for a 20-foot building* so that defendant was not in breach of any agreement for failing to build either the 24-foot or the 20-foot building.

■ Did the trial court err in directing a verdict of not guilty for the defendant? Two evidentiary issues arise: (1) Does the evidence as a matter of law fail to prove that the original written lease contract had been modified by parol to provide for the construction of the building 24 feet instead of 20 feet wide? (2) Does the evidence as a matter of law compel a finding that the parties mutually abandoned their original agreement for the construction of a building 20 feet wide? In passing on these issues we have the well-established rule in this jurisdiction that a party asserting the parol modification of a written contract has the burden of proving the modification by clear and convincing evidence.[1] The burden is not met by a mere preponderance of the evidence.[2]

It is to be noted that plaintiffs' complaint seeks judgment for restitution of the premises on the ground that defendant has failed to comply with, and has repudiated, its obligation under the original written lease to build a structure for the benefit of plaintiffs as lessors. As a defense, defendant, in its answer, alleged that it had been prevented from complying with the covenant by plaintiffs' conduct and that plaintiffs are estopped to assert, or that they have waived, a breach of the original covenant. Plaintiffs introduced testimony to show a parol modification of the contract to the effect that plaintiffs' portion of the structure should be 4 feet wider than originally agreed. Although any issue as to modification falls wholly outside the allegations of the complaint, it is clear, in any event, that plaintiffs, in asserting such modification, have not met their burden of proof by clear and convincing evidence which would sustain a jury finding of modification.

[1]Hentges v. Schuttler, 247 Minn. 380, 77 N. W. (2d) 743; John A. Stees Co. v. Willis, 151 Minn. 192, 186 N. W. 391; Dwyer v. Illinois Oil Co. 190 Minn. 616, 252 N. W. 837; Slawson v. Northern States Power Co. 201 Minn. 313, 276 N. W. 275; Butterick Publishing Co. v. Johnson, 201 Minn. 345, 276 N. W. 277; 4 Dunnell, Dig. (3 ed.) § 1777.

[2]Dwyer v. Illinois Oil Co. *supra;* Buck v. Patrons Co-op. Fire Ins. Co. 177 Minn. 509, 225 N. W. 445.

16

The testimony relating to the negotiations between the parties for the modification of the contract is, however, material to a consideration of whether the evidence as a matter of law compels a finding that the parties by *mutual agreement* abandoned the original contract provision for the construction of a building 20 feet wide.

■ Any so-called abandonment of a contract by *mutual agreement* is in the nature of rescission.[3] Rescission as a general rule must be exercised in toto and is applied to the contract in its entirety with the result that what has been done is wholly undone and no contract provisions remain in force to bind either of the parties.[4] Here there was no rescission which terminated the lease as a whole. The trial court pursuant to defendant's motion found in effect that the construction covenant in the original agreement, and no other provision of the lease, had been rescinded. A rescission—or so-called abandonment— by *mutual agreement* of a single provision of a contract is a modification or an amendment without a cancellation or a voidance of the contract as a whole. He who asserts such modification (here asserted as a defense by the defendant) has the burden of proving it by clear and convincing evidence.

Do we have clear and convincing evidence which as a matter of law establishes a mutual agreement to rescind the original construction provision in the lease? Any conclusion to that effect must rest on a finding that the parties by their words and conduct, during their unsuccessful negotiations for the enlargement of the building, clearly and convincingly reflected a mutual agreement that defendant be wholly released from his original obligation to build a structure 20 feet wide. When preliminary negotiations for a valid agreement to modify an existing contractual provision fail, it does not necessarily follow that the parties have thereby mutually agreed to forego or waive a performance of the original obligation.

Here negotiations for a contractual modification were proceeding amicably, and in reliance upon the expectation that negotiations would be successfully consummated, defendant extended the foundation

---

[3]See, 12 Am. Jur., Contracts, §§ 433, 439, 442.

[4]12 Am. Jur., Contracts, § 444.

trenches and laid footings for the 4-foot increase in width. All such construction stopped, however, on November 27 when the parties sharply disagreed over defendant's demand that no inside stools be permitted in plaintiffs' part of the building. Before the meeting broke up, one of the Ericksons declared that defendant would build for plaintiffs *only what was required by the lease and nothing more.* This declaration standing by itself would justify an inference that Erickson then understood that the original construction provision was still in effect. Plaintiffs' failure either to reply or to accept defendant's announcement that he would do only what he was already bound to do does not as a matter of law establish a mutual intent to rescind or abandon the original obligation. After the conference on November 27, plaintiffs were told by defendant's foreman that he had orders to stop all work on plaintiffs' part of the building. Defendant thereafter completed its part of the building and left plaintiffs' part untouched. Under the date of November 28, 1956, plaintiffs by letter notified defendant that its refusal to comply with the construction covenant in the lease would constitute a default which, upon the expiration of 30 days, would give plaintiffs the option to declare the lease at an end. Sometime after the expiration of the 30-day period, or specifically on January 8, 1957, plaintiffs arranged to have its portion of the building constructed by a third party. In the light of the evidence as a whole it was error to take the issue of rescission or mutual abandonment away from the jury by directing a verdict.

Defendant asserts, however, that an action in unlawful detainer for breach of a lease is completely inappropriate here since plaintiffs' notice of default was dated November 28, 1956, while the lease stipulated that the term of the lease was not to commence until January 1, 1957. Defendant argues that if its actions constituted a breach it must have been an anticipatory breach[5] and states that the doctrine of anticipatory breach does not apply to leases. We do not deem it necessary to decide whether or not the doctrine of anticipatory breach applies to leases in

---

[5]"An anticipatory breach of contract is one committed before the time has come when there is a present duty of performance, and is the outcome of words or acts evincing an intention to refuse performance in the future." 12 Am. Jur., Contracts, § 391. See, also, 4 Dunnell, Dig. (3 ed.) § 1799.

this state. Although the formal lease stated the period of the lease was to commence on January 1, 1957, it is quite clear that plaintiffs were required to, and did, surrender the premises to defendant at the time the lease was executed in November 1956. In fact, the concurrently executed letter of agreement required that plaintiffs immediately remove their equipment from, and allow the immediate razing of, their existing drive-in building so that construction work according to the lease agreement could begin. Plaintiffs complied with this provision, and defendant immediately proceeded to wreck plaintiffs' building and started the construction work. Clearly by terms of the letter which was an integral part of the lease, and as confirmed by their acts of immediate performance pursuant thereto, the parties revealed their agreement that the construction covenant should become operative at once and that the performance of the contract should not be delayed until January 1, which was the formal date adopted for the commencement of the 20-year lease term. It is true that the lease provided that defendant should have until January 1 to obtain the necessary construction permits, and if it was unable to obtain them, the lease should be null and void. This provision was obviously inserted to protect defendant from any contractual liability for nonperformance due to any unforeseen inability to obtain such permits. This precautionary provision was not designed to delay the recognized obligation to commence performance immediately. The parties themselves recognized that their lease agreement was operative early in November 1956 and, if we were to hold otherwise, we should be ignoring the unmistakable contractual intent of the parties and the realities of the situation as displayed by their own conduct. Under the circumstances we are not concerned with an anticipatory breach but with the question of an actual breach of the lease terms.

The judgment of the trial court is reversed and a new trial is granted in accordance with this opinion.

Reversed.