# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2379

_____

Sokol & Associates, Inc.,

   Plaintiff-Appellant,

v.

Techsonic Industries, Inc.;
Johnson Outdoors, Inc.,

   Defendants-Appellees.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  District of Minnesota.
\*
\*
\*
\*
\*

_____

Submitted: February 13, 2007
Filed: July 26, 2007

_____

Before RILEY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Sokol & Associates, Inc. ("SA Inc.") appeals the district court's[1] grant of summary judgment in favor of Techsonic Industries, Inc. ("Techsonic") and Johnson Outdoors, Inc. ("Johnson") on SA Inc.'s claim for breach of a sales representative agreement.  We affirm.

_____

[1] The Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota, presiding with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

I.    Background

SA Inc., the sole appellant in this matter, is a Minnesota corporation that serves as an independent sales representative to manufacturers of hunting, fishing, and marine products. SA Inc. is a successor-in-interest to Sokol and Associates ("S&A"), a sole proprietorship under which Paul Sokol ("Mr. Sokol") conducted the same type of business. Although Mr. Sokol created both entities and they have similar names, they are legally distinct.

Appellee Techsonic is an Alabama corporation that manufactures fishing and marine products, such as fishfinders, under a variety of brand names. In May 2004, appellee Johnson, a publicly-held marketer of outdoor recreation products, acquired Techsonic from Teleflex Incorporated ("Teleflex"). Until May 2004, Techsonic was a wholly owned subsidiary of Teleflex. Teleflex is not a party to this lawsuit.

In 1997, Techsonic purchased Zercom Marine ("Zercom"), a company that also manufactured marine products. Mr. Sokol had been involved in the founding of Zercom. As a result of Zercom's acquisition, Techsonic entered into a sales representative agreement ("the 1997 Agreement") with S&A whereby Mr. Sokol, doing business as S&A, would sell Zercom-branded products to customers within a specific geographic area and to certain non-territory-based customers. The agreement contained a choice-of-law provision invoking Minnesota state law. The agreement stated, in pertinent part:

> The Representative shall faithfully, diligently and to the best of its ability endeavor to promote and extend the sales of the Company's Zercom Marine branded products (the "Products") which are presently those products described in Exhibit A.

The 1997 Agreement had a ten-year term and allowed Techsonic to terminate the agreement prior to the end of that period only if S&A breached a material term of the

contract and failed to cure the breach within ninety days. Techsonic had the right to discontinue the sale of products that were no longer economically viable. S&A was to earn a five percent commission on all of S&A's Zercom sales. The agreement did not explicitly provide for modification; SA Inc. contends the parties anticipated modifications with respect to the product lines to be sold by S&A. Techsonic president Charles Stott signed the agreement on behalf of Techsonic and Mr. Sokol signed it on behalf of S&A.

In the fall of 1998, Techsonic acquired Fisheye, a marine products brand. Shortly thereafter, Stott verbally assigned S&A the right to sell Fisheye products and set a commission rate of five percent for those sales.

Beginning in November 1998, Techsonic and S&A engaged in negotiations regarding the sale of Humminbird products. Humminbird is another brand of marine products manufactured by Techsonic. In August 1999, Dave Overstreet, a regional sales manager for Teleflex, informed Mr. Sokol that S&A would be gaining responsibility for selling Humminbird products. Overstreet states that "one of the main reasons why Teleflex decided that [S&A] would take over for [the previous sales representatives] with respect to selling Humminbird products, was the fact that Techsonic and [S&A] were party to a 10-year agreement, which agreement did not expire until 2007." S&A records reflect S&A began to sell Humminbird products in October 1999.

Also in October 1999, Teleflex proposed a written contract to S&A ("the 1999 Agreement"). Tom Douglass , a vice president with Teleflex, copied John Cinis[2] and

---

[2] There was some confusion in the record below as to Cinis's position during the events in question. After SA Inc. asserted on appeal that Cinis was a "Techsonic executive" during these negotiations, the appellees filed a Motion to Modify the record to clarify this question. The appellants do not object to the motion, which we hereby grant. According to the modified record, Cinis worked for Techsonic as vice

Techsonic President Stott on the proposal. The products covered by the agreement and the commissions to be applied to sales were listed in Exhibits A and C attached to the contract, which were dated October 15, 1999 and referenced in the contract's main text. The products listed in Exhibit A included the Zercom, Fisheye, and Humminbird brands. The 1999 Agreement specified that either party could terminate the agreement with thirty days notice. S&A initially rejected the proposal and further negotiations ensued.

During the course of the negotiations, S&A requested a letter confirming the relationship between the 1997 Agreement with Techsonic and the proposed 1999 Agreement with Teleflex. On January 4, 2000, Douglass sent S&A a letter which stated, in part:

> To confirm our conversation in regards to the old vs. new contract, Teleflex Marine agrees that your Original Contract for Representation of Zercom, which was written as a result of the acquisition of Zercom by Techsonic Industries, will continue in effect for its duration as stated in that contract.
>
> The new contract, dated October 15, 1999, supplements your original contract. Changes in territory and commission paid, as agreed by you, John Cinis and me, are stated in Exhibits "A" and "C" of the new contract. These Exhibits are dated January 4, 2000.

The exhibits were enclosed with the letter.

SA Inc. contends Mr. Sokol received assurances that the 1999 Agreement was a matter of housekeeping and would not affect the 1997 Agreement. However, S&A failed to obtain any further written assurances regarding either contract. Notably,

---

president of sales from September 1998 through approximately July 1999. At that point, he began to work as vice president of sales for Teleflex.

S&A did not obtain, or even request, written confirmation that the ten-year term of the 1997 Agreement governed Humminbird products, which were not expressly listed in the 1997 Agreement.

S&A ultimately made no changes to the proposed 1999 Agreement, and Mr. Sokol signed and returned the 1999 Agreement on February 25, 2000. SA Inc. notes that at the time Mr. Sokol executed the 1999 Agreement, the exhibits were not attached. SA Inc. does not contest, however, that Mr. Sokol received the exhibits attached to Douglass's letter or that the main text of the 1999 Agreement referenced exhibits.

On April 24, 2000, S&A assigned the 1997 Agreement to SA Inc., a newly formed corporate entity. Techsonic agreed to the assignment. S&A did not assign the 1999 Agreement. Thus, none of the parties to this case—SA Inc., Johnson, or Techsonic—are parties to the 1999 Agreement between S&A and Teleflex.[3]

As of 2002, Techsonic had discontinued both Fisheye and Zercom product lines. SA Inc. has not alleged bad faith in those discontinuations and has not pursued claims for breach of contract on those grounds. SA Inc. continued to sell Humminbird products and to receive commissions from Techsonic until July 2004.

On May 6, 2004, Johnson acquired Techsonic from Teleflex. The Stock Purchase Agreement finalizing the transaction specifically listed the 1997 Agreement as part of the purchase, describing the contract as "Sales Representative Agreement dated December 12, 1997 between [Techsonic] and Sokol and Associates—Sokol and Associates territories were changed in 1999."

---

[3] SA Inc. originally listed Teleflex as a defendant in this action. Subsequently, SA Inc. and Teleflex stipulated to the dismissal of Teleflex from the suit with prejudice and the district court dismissed Teleflex.

After it acquired Techsonic, Johnson notified SA Inc. that it would be realigning its sales force. In June 2004, Johnson told SA Inc. to discontinue its sales of Humminbird products. At that time, Humminbird was the only product line SA Inc. sold for Techsonic or Johnson. October 4, 2004, Johnson gave SA Inc. thirty days notice of its intent to terminate SA Inc. as a sales representative for Techsonic.

SA Inc. filed suit in state court, and Johnson and Techsonic removed the case to the District Court for the District of Minnesota. SA Inc. alleged that the 1997 Agreement had been modified to apply to SA Inc.'s sales of Humminbird products, and therefore its representation of Humminbird was subject to the 1997 Agreement's ten-year term. Thus, SA Inc. claimed Johnson and Techsonic breached the 1997 Agreement by wrongfully terminating the contract before the expiration of the ten-year term. SA Inc. also asserted a claim under the Minnesota Sales Representative Act, Minn. Stat. § 325E.37, alleging wrongful termination of the 1997 Agreement without good cause and proper notice. Techsonic and Johnson moved for summary judgment.

The district court granted summary judgment on behalf of Techsonic and Johnson. Among other findings, the district court found that SA Inc. had not presented sufficient evidence of modification of the 1997 Agreement to create a genuine issue for trial. Because SA Inc. only asserted claims based upon the 1997 Agreement, and modification of the contract was necessary to establish the claims, failure to provide sufficient evidence of modification necessarily resulted in summary judgment for Techsonic and Johnson. This appeal followed.

II.     Discussion

Although the factual background of this case is somewhat convoluted and involves changing parties, multiple products, and two written agreements, there is one basic question before the court: is there a genuine issue of material fact as to whether

the 1997 Agreement was modified so that its ten-year term applies to the sale of Humminbird products? SA Inc.'s claims rest solely upon an alleged breach of the 1997 Agreement, and the text of that agreement limits its application to Zercom products; therefore, unless there was a modification, SA Inc. has no cause of action. SA Inc. alleges it presented sufficient evidence of oral and written modification, as well as modification by conduct, of the 1997 Agreement to foreclose summary judgment. We disagree.

We review de novo the district court's grant of summary judgment. Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 468 (8th Cir. 2004). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Mere allegations not supported with specific facts are insufficient to establish a material issue of fact and will not withstand a summary judgment motion." Henthorn v. Capitol Comm., Inc., 359 F.3d 1021, 1026 (8th Cir. 2004).

Here, the question is whether there is a genuine issue as to whether the 1997 Agreement was modified to include Humminbird products. In considering this question, we "view the evidence presented through the prism of the substantive evidentiary burden." Anderson, 477 U.S. at 254. Minnesota law applies to this case. "[T]he well-established rule in [Minnesota] [is] that a party asserting the parol modification of a written contract has the burden of proving the modification by clear and convincing evidence. The burden is not met by a mere preponderance of the evidence." Merickel v. Erickson Stores Corp., 95 N.W.2d 303, 305 (Minn. 1959). If a rational trier of fact could not conclude by clear and convincing evidence that the

1997 Agreement was modified so that its ten-year term applied to Humminbird products, summary judgment is proper. Id.

"A 'modification of a contract' is a change in one or more respects, which introduces new elements into the details of the contract . . . but leaves the general purpose and effect undisturbed." 17A Am. Jur. 2d Contracts § 507. A written contract can be modified by oral agreement of the parties. Larson v. Hill's Heating and Refrig. of Bemidji, Inc., 400 N.W.2d 777, 781 (Minn. Ct. App. 1987). Further, "[i]n the absence of an express verbal agreement, subsequent acts and conduct of the parties may establish implied modification of the contract." Reliable Metal, Inc. v. Shakopee Valley Printing, Inc., 407 N.W.2d 684, 687 (Minn. Ct. App. 1987). The parol evidence rule does not bar evidence of alteration to a contract after its execution. Duffy v. Park Terrace Supper Club, Inc., 206 N.W.2d 24, 27 (Minn. 1973). However, allegations of modifications inconsistent with the written terms of a contract are subject to "rigorous examination." Bolander v. Bolander, 703 N.W.2d 529, 541-42 (Minn. Ct. App. 2005).

SA Inc. asserts the 1997 Agreement was modified to include representation of Humminbird products. SA Inc. points to oral statements, writings, and the conduct of the parties as evidence sufficient to raise a genuine question of fact regarding modification of the 1997 Agreement. We discuss each in turn.

First, SA Inc. offers oral statements, including those made by Dave Overstreet, as evidence of modification of the 1997 Agreement. Overstreet, however, never stated or even implied that the terms of the 1997 Agreement were modified to apply to the sale of Humminbird products. Overstreet indicated that the long-term nature of the relationship between Techsonic and S&A, SA Inc.'s predecessor-in-interest, was the motivation behind assigning S&A the rights to sell Humminbird products. Overstreet's statements show why S&A, and subsequently SA Inc., would be selling Humminbird, not the terms under which the sales would occur. Considering a pre-

-8-

existing contractual relationship in deciding on the best sales representative for another brand does not evince an intent to transpose the terms of the pre-existing agreement onto the new arrangement. Nothing in Overstreet's affidavit, or in his statements as recounted by Mr. Sokol, supports SA Inc.'s assertion that the 1997 Agreement was modified so that it's ten-year term applied to the sale of Humminbird products.

In addition to Overstreet's statements, SA Inc. relies upon oral representations allegedly made to Mr. Sokol by John Cinis, Charlie Stott, and Tom Douglass as evidence of oral modification of the 1997 Agreement. SA Inc. does not provide the court with citations to the record in support of its claims regarding statements by Stott, and we therefore do not consider those allegations. See United States v. Wadlington, 233 F.3d 1067, 1081 (8th Cir. 2000) (citing Fed. R. App. P. 28(a)(9) and declining to consider contentions raised without reference to the parts of the record supporting the claims). Some statements allegedly made by Cinis and Douglass provide support for SA Inc.'s assertion that the 1997 Agreement was modified to include Humminbird products. In his deposition, Mr. Sokol alleged that Cinis and Douglas stated during negotiations for the 1999 Agreement that Humminbird responsibilities "would be part of my 1997 agreement."[4] However, when asked to clarify what he meant by that statement, Mr. Sokol obfuscated:

---

[4] Techsonic and Johnson assert that all of the statements proffered by SA Inc. are inadmissible hearsay and we should therefore not consider them. Indeed, only evidence that would be admissible at trial may be relied upon to counter a motion for summary judgment. Shaver v. Indep. Stave Co., 350 F.3d 716, 723 (8th Cir. 2003). However, if the individuals making the statements were agents speaking on behalf of a party, either Techsonic or Johnson, the statements would be non-hearsay admissions of a party opponent and therefore admissible. See Fed. R. Evid. 801(d)(2)(D). The record does not establish either Cinis or Douglass's ability to bind either of the appellees. Nevertheless, because we conclude the statements, even if considered, fail to raise genuine issue of material fact warranting denial of summary judgment, we need not make that determination.

Q:     So you specifically asked whether the Humminbird line would be handled under your 1997 agreement.  And [Cinis and Douglass] told you, yes, it would?

A:     No.  I specifically—I already had Humminbird assigned to me verbally.

Having Humminbird assigned to SA Inc. or its predecessor verbally does not demonstrate modification of the 1997 Agreement.  Minnesota law provides for oral agreements for sales representative contracts.  See Minn. Stat. § 325E.37(e) (defining "sales representative agreement").  Many of the statements alleged to support modification of the 1997 Agreement only evince an oral agreement for representation of Humminbird prior to the effectuation of the 1999 Agreement.  Some of Mr. Sokol's own statements belie SA Inc.'s assertion that the 1997 Agreement's specific terms were grafted onto the sales relationships for Fisheye or Humminbird.  In his deposition, Mr. Sokol stated that paragraph 15 of the 1997 Agreement, which addresses Techsonic's right to discontinue sales of products that are no longer economically viable, only applied to Zercom.  SA Inc. does not explain why this paragraph would be so limited if the 1997 Agreement as a whole had been modified to apply to Humminbird products.  If the 1997 Agreement was not *in toto* modified to apply to the sale of Humminbird products, evidence of the provisions that were expanded is required.  Notably, SA Inc. proffers *no* evidence of any statements specifically expanding the ten-year term of the 1997 Agreement to apply to Humminbird products.

Second, SA Inc. highlights written documents as demonstrating modification of the 1997 Agreement.  Specifically, SA Inc. cites 1) the January 2000 letter from Tom Douglass, 2) the exhibits attached to Douglass's letter, 3) the document assigning rights to the 1997 Agreement from S&A to SA Inc, and 4) the 2004 Stock Purchase Agreement.  SA Inc. alleges the writings confirm the oral representations discussed above.  We disagree.  The writings instead undermine the conclusion SA Inc. advocates.  Turning first to the Douglass letter, SA Inc. argues the letter confirms

Douglass's alleged oral representations that the 1997 Agreement had been modified to include Humminbird products. However, in the letter Douglass refers to the 1997 Agreement as Mr. Sokol's "Original Contract for Representation of Zercom" and states that the agreement was reached " as a result of the acquisition of Zercom by Techsonic Industries." The letter, therefore, underscores that the 1997 Agreement pertains to Zercom products: it highlights the unique origins of the contract and labels the contract as for Zercom representation. The letter in no way indicates expansion of the 1997 Agreement beyond Zercom products. Moreover, the letter states the 1997 Agreement will "continue in effect." This specific acknowledgment of the continuing validity of the 1997 Agreement, separate from the 1999 Agreement, undermines any claim that the two agreements were intertwined by the use of the term "supplement" in the following paragraph.

Likewise, the exhibits attached to the Douglass letter are not beneficial to SA Inc. SA Inc. claims the exhibits modify the 1997 Agreement, not the 1999 Agreement and asserts there is a genuine question of fact as to which agreement the exhibits apply. However, the Douglass letter to which the exhibits were attached identifies the exhibits as "Exhibits 'A' and 'C' of the new contract" and identifies the "new contract" as the contract dated October 15, 1999. In addition, the 1999 Agreement explicitly references the exhibits, which provide specific terms for the contract. Thus, from the plain language of the letter and the 1999 Agreement, these new exhibits, dated January 4, 2000, modify the 1999 Agreement. We cannot accept SA Inc.'s invitation to disregard the plain language of Douglass's letter and the contract's explicit terms to create a question of fact.

Nor do the assignment of rights or the Stock Purchase Agreement buttress SA Inc.'s claim of modification of the 1997 Agreement so that the ten-year term applied to Humminbird products. The assignment of rights has no information whatsoever about the nature of the agreement that is being assigned. Nothing in the assignment or in Techsonic's consent to the assignment even suggests a modification. The Stock

Purchase Agreement, however, can be read as suggesting modification to the 1997 Agreement. The Stock Purchase Agreement states that "Sokol and Associates['] territories were changed during 1999." That phrasing can be interpreted as meaning the territories covered by the 1997 Agreement had been modified in 1999. There are other possible interpretations. But, even under this most favorable reading, nothing suggests the 1997 Agreement was expanded to apply to additional products.

Finally, SA Inc. looks to the actions of the parties to demonstrate the application of the 1997 Agreement's ten-year term to Humminbird sales. SA Inc. asserts S&A's sales of Fisheye products based upon verbal agreement and the sales of Humminbird products prior to the signing of the 1999 Agreement are evidence of modification of the 1997 Agreement. These actions, however, simply demonstrate the parties agreed orally for S&A and SA Inc. to represent additional brands. Nothing in those actions raises an inference that the parties intended for the specific terms outlined in the 1997 Agreement—an agreement entered into as part of Techsonic's acquisition of Zercom—to apply to the unrelated brands. SA Inc. also points to its receipt of payments from Techsonic after SA Inc.'s creation and without the assignment of the 1999 Agreement to SA Inc. as evidence of a modification to the 1997 Agreement. SA Inc. argues that, because only the 1997 Agreement was assigned, the payments must have been made pursuant to that agreement and not the 1999 Agreement. As the district court stated, "[t]his argument fails, however, because the parties' conduct suggests a modification of the 1999 agreement, not the 1997 agreement." Unlike the 1997 Agreement, the 1999 Agreement specifically covers Humminbird sales. While neither SA Inc. nor Teleflex chose to assign the 1999 Agreement when SA Inc. was formed, they continued to perform the obligations under that agreement.

Relying upon the evidence outlined above, SA Inc. asserts the 1997 Agreement was modified so that its ten-year term applied to the sale of Humminbird products. Considering the steep evidentiary standard Minnesota law requires to demonstrate

modification of a written contract, this position is unsupportable. SA Inc. fails to offer anything near clear and convincing evidence that the ten-year term of the 1997 Agreement applied to the sale of Humminbird products. The weight of the evidence indicates the 1997 Agreement pertained solely to Zercom products. Because no reasonable factfinder could find in SA Inc.'s favor, summary judgment was properly granted.

III.    Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

_____