**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1667**

Michael A. Knight,
Appellant,

vs.

Sean K. McGinity,
Respondent.

**Filed August 10, 2015**
**Affirmed in part, reversed in part, and remanded**
**Schellhas, Judge**

Hennepin County District Court
File No. 27-CV-13-7064

Jared M. Goerlitz, PFB Law, PA, St. Paul, Minnesota (for appellant)

Sean K. McGinity, Rahway, New Jersey (pro se respondent)

Considered and decided by Larkin, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

**S Y L L A B U S**

In a month-to-month residential lease with no definite term and a right of both parties to terminate the lease with 45 days' written notice, a clause prohibiting the parties from giving notice that would result in a lease termination during specified months each year does not constitute an automatic renewal clause subject to Minn. Stat. § 504B.145 (2014).

## OPINION

**SCHELLHAS**, Judge

In this landlord-tenant dispute, appellant challenges the judgment, arguing that the district court erred by concluding that the parties' written lease did not govern their rental arrangement. Appellant also challenges the court's denial of his motion for sanctions under Minn. R. Civ. P. 37.03(b). We affirm in part, reverse in part, and remand.

### FACTS

On December 13, 2001, respondent Sean McGinity signed a written lease for an apartment in a rental property owned by Bill Frothinger. The lease was "month to month" with no expiration date; required a $525 security/damage deposit, a monthly rent payment of $525, and 45 days' notice of termination; and contained the following handwritten clause: "No notice to move out between Nov. 1 & Feb. 28 or 29" (no-move-out clause). In January 2004, appellant Michael Knight purchased the rental property, and Frothinger assigned the lease and the deposit to Knight.

In the summer of 2005, Knight presented McGinity with a new lease that would have increased the monthly rent to $540. McGinity did not sign the new lease but increased his monthly rent payments to $535. On or about December 15, 2005, McGinity notified Knight of his intent to vacate the apartment by January 31, 2006, but instead remained in the apartment and continued to pay rent. In late November or early December of 2006, McGinity notified Knight that he was vacating the apartment and vacated it. McGinity paid rent for November 2006, but he did not pay rent for December 2006, January 2007, or February 2007. Knight discovered that McGinity had damaged a

2

wall in the apartment, that the apartment needed cleaning, and that McGinity's abandoned personal property required removal. Knight did not re-lease the apartment until after February 2007, and he sued McGinity in conciliation court in February 2013, seeking rent for December 2006, January 2007, and February 2007; late fees; and damages for repair, cleaning, and removal costs. Following the conciliation court's ruling against him, Knight removed the case to district court.

Knight conducted discovery in district court, including a request under Minn. R. Civ. P. 36.01 that McGinity admit that he did not pay rent for December 2006, January 2007, and February 2007. McGinity responded, "To the best of my recollection I paid rent for December 2006. I was not obligated to pay rent for January and February 2007." But at the subsequent bench trial, McGinity admitted that he did not pay rent for December 2006.

The district court concluded that the parties' rental arrangement "was a month-to-month rental not governed by any valid written lease"; that Knight was entitled to rent for December 2006, which Knight recovered by retaining McGinity's security deposit; that McGinity was not liable for January or February 2007 rent; and that Knight failed to prove that he was owed late fees at $5 per day. The court acknowledged that the written lease provided that Knight was entitled to "attorney's fees and other costs of a legal action," but awarded Knight neither. Knight moved for amended findings and for sanctions under Minn. R. Civ. P. 37.03(b), due to McGinity's failure to admit, among other things, that he did not pay rent for December 2006. The court amended its findings

3

and ruled that Knight was entitled to rent for January 2007 but denied Knight's motion

for sanctions under rule 37.03(b).

This appeal follows.

## ISSUES

I.    Did the district court err by concluding that the written lease was invalid and did not govern the parties' rental arrangement?

II.   Did the district court abuse its discretion by denying Knight's motion for sanctions under Minn. R. Civ. P. 37.03(b)?

## ANALYSIS

**I.    The district court erred by concluding that the written lease was invalid and did not govern the parties' rental arrangement.**

The district court denied Knight rent for February 2007, concluding that the no-move-out clause was tantamount to an automatic renewal clause subject to a notice requirement under Minn. Stat. § 504B.145 (2014).[1] Because Knight did not provide that notice, the court concluded that the parties' rental arrangement "resort[ed] to a standard month-to-month lease with a 30 day notice." Knight argues that the no-move-out clause was not an automatic renewal clause subject to Minn. Stat. § 504B.145. We agree.

"[Appellate courts] review the interpretation of a statute de novo." *Seagate Tech., LLC v. W. Digital Corp.*, 854 N.W.2d 750, 757 (Minn. 2014). "The goal of statutory interpretation is to effectuate the intent of the Legislature." *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716 (Minn. 2014). "If the Legislature's intent is clear from the

---

[1] We apply the most recent version of the statute in this opinion because it has not been amended in relevant part. *See Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn.2000) (stating that, generally, "appellate courts apply the law as it exists at the time they rule on a case").

4

unambiguous language of the statute, [appellate courts] apply the statute according to its plain meaning." *Id.* at 716–17.

"[L]eases are contracts to which [appellate courts] apply general principles of contract construction." *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 14 (Minn. 2012). "Contract interpretation is . . . a question of law that [appellate courts] review de novo." *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 843 N.W.2d 577, 581 (Minn. 2014). "[L]eases should be construed so as to give effect to the intention of the parties." *Snyder's Drug Stores, Inc. v. Sheehy Props., Inc.*, 266 N.W.2d 882, 884 (Minn. 1978). "Great weight should be given to the intention of the parties regarding the purpose of the lease." *Orme v. Atlas Gas & Oil Co.*, 217 Minn. 27, 30, 13 N.W.2d 757, 760 (1944).

Section 504B.145 provides:

> Notwithstanding the provisions of any residential lease, in order to enforce any automatic renewal clause of a lease of an original term of two months or more which states, in effect, that the term shall be deemed renewed for a specified additional period of time of two months or more unless the tenant gives notice to the landlord of an intention to quit the premises at the expiration of the term due to expire, the landlord must give notice to the tenant as provided in this section. The notice must be in writing and direct the tenant's attention to the automatic renewal provision of the lease. The notice must be served personally or mailed by certified mail at least 15 days, but not more than 30 days prior to the time that the tenant is required to furnish notice of an intention to quit.

Here, the written lease was not for an original term of two months or more; the lease plainly stated that it was month-to-month. And nothing in the no-move-out clause

5

provided that the lease would renew for a specified period of two months or more unless McGinity gave notice to Knight of his intent "to quit the premises at the expiration of the term due to expire." Rather, the no-move-out clause specified winter months during which neither party could give notice to terminate the lease. Frothinger testified that he typically included the no-move-out clause in leases because of his difficulty in finding tenants to move in during the winter months due to the cold weather and holidays. He also explained that tenants had difficulty finding parking spots for moving vans in the winter months. Nothing in the record suggests that the no-move-out clause was intended to automatically renew the lease upon McGinity's failure to give notice of his intent to quit the premises. We conclude that the no-move-out clause in the written lease did not constitute an automatic renewal clause subject to section 504B.145 and that the district court therefore erred by denying Knight rent for February 2007.

The district court also denied Knight late fees, attorney fees, and costs, concluding that "[b]y increasing the rent and thus changing the terms of the Original Lease, the Original lease is no longer valid and the terms of the agreement . . . are those of the standard month-to-month lease." Knight argues that the unchanged terms of the written lease remained in effect. We agree.

"[A] written contract may be modified after its execution by the acts and conduct of the parties . . . ." *Wormsbecker v. Donovan Constr. Co.*, 247 Minn. 32, 41, 76 N.W.2d 643, 649 (1956). The supreme court has stated that "when a contract is modified by consent of the parties it consists thereafter of the new terms *and of all of the old ones which were not changed*, and . . . a subordinate and separable part of a contract may

6

always be modified by the parties *without a cancellation or avoidance of the whole contract.*" *First Nat'l Bank v. St. Anthony & Dakota Elevator Co.*, 171 Minn. 461, 465, 214 N.W. 288, 289 (1927) (emphasis added); *cf. Merickel v. Erickson Stores Corp.*, 255 Minn. 12, 16, 95 N.W.2d 303, 306 (1959) ("A rescission—or so-called abandonment—by mutual agreement of a single provision of a contract is a modification or an amendment without a cancellation or a voidance of the contract as a whole." (emphasis omitted)).

Here, Knight and McGinity agreed to an increase in rent around the summer of 2005. McGinity paid, and Knight accepted, increased rent from that time until November 2006, reflecting the parties' agreement to modify the monthly rent payment. No evidence in the record suggests that the parties cancelled the written lease. The unchanged terms of the written lease therefore governed the parties' rental arrangement.

The written lease provided that Knight was entitled to $5 per day "if [McGinity] does not pay the full rent by the fifth day of the month in which it is due." Because we have concluded that the written lease governed the parties' rental arrangement, Knight is entitled to recover late fees from McGinity. The district court noted that any late fees owed to Knight would be limited to 8% of the rent amount under Minn. Stat. § 504B.177. But Minn. Stat. § 504B.177 became effective January 1, 2011, and applies to "leases entered into or renewed on or after that date." 2010 Minn. Laws ch. 315, § 5, at 852. Here, the parties neither entered into nor renewed the written lease on or after January 1, 2011. Consequently, section 504B.177 is inapplicable to the written lease and does not limit the late fees that Knight may recover.

7

The written lease allowed Knight to recover "actual attorney's fees and other costs" if and when he "initiate[d] any legal action against [McGinity]." Because we have concluded that the written lease governed the parties' rental arrangement, Knight is entitled to recover his attorney fees and costs incurred in the proceeding.

We reverse the district court's order denying Knight rent for February 2007, late fees, attorney fees, and costs. On remand, the district court must determine the late fees, attorney fees, and costs to which Knight is entitled.

## II. The district court did not abuse its discretion by denying Knight's motion for sanctions under Minn. R. Civ. P. 37.03(b).

The district court denied Knight's motion for sanctions under rule 37.03(b), reasoning that "[McGinity] had reasonable ground to believe that he might prevail on the issue of whether he paid rent in December 2006" in light of "the significant passage of time and the reality that memories fade."

We review a district court's award or denial of sanctions under rule 37.03(b) for an abuse of discretion. *See Indep. Sch. Dist. No. 404 v. Castor*, 670 N.W.2d 758, 765 (Minn. App. 2003) (applying abuse-of-discretion standard of review to denial of sanctions under rule 37.03); *Zurich Reinsurance (UK) Ltd. v. Canadian Pac. Ltd.*, 613 N.W.2d 760, 765–66 (Minn. App. 2000) (applying abuse-of-discretion standard of review to award of sanctions under rule 37.03), *review denied* (Minn. Sept. 26, 2000).

Rule 37.03(b) provides:

> If a party fails to admit . . . the truth of any matter as requested pursuant to Rule 36, and if the party requesting the admissions thereafter proves . . . the truth of any such matter, the requesting party may apply to the court for an order

8

requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney fees. The court shall make the order unless it finds that . . . the party failing to admit had reasonable ground to believe that the party might prevail on the matter . . . .

Knight argues that McGinity did not have a reasonable ground to believe he might prevail because he did not make a reasonable inquiry into the information known to or readily obtainable by him, as required by rule 36.01. McGinity admitted that he did not investigate the matter before answering the request for admission and that he had no evidence that he paid rent for December 2006. And on cross-examination, McGinity testified:

I am clearly openly admitting after going back through things and looking through emails from family—I finally looked at emails from family. I was out of there at the end of November. And my feeling and my recollection to the best, you know, is that I paid my last month's rent and he kept my security deposit.

Knight proved that McGinity did not pay rent for December 2006. But Knight's argument fails because he points to nothing in the record that suggests McGinity's failure to admit he did not pay rent for December 2006 was vexatious or in bad faith. *See Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127, 132 (Minn. 1980) (agreeing with district court that no evidence in record showed that refusal to make admissions was unreasonable or in bad faith); *cf. Gilchrist v. Perl*, 387 N.W.2d 412, 418–19 (Minn. 1986) (concluding that sanctions against defendants were warranted where their "answer was vexatious, and defendants ha[d] offered no good reason for their failure to admit").

Although we may have decided Knight's motion for sanctions differently, we defer to the district court's discretion in denying Knight sanctions against McGinity.

## D E C I S I O N

The district court erroneously concluded that the written lease was invalid and did not govern the parties' rental arrangement and therefore erred by denying Knight rent for February 2007, late fees, attorney fees, and costs. The district court did not abuse its discretion by denying Knight's motion for sanctions under rule 37.03(b).

**Affirmed in part, reversed in part, and remanded.**